1  LEONARD PEÑA (State Bar No. 192898)
   lpena@penalaw.com
2  PEÑA & SOMA, APC
3  402 South Marengo Ave., Suite B
   Pasadena, California 91101
4  Telephone (626) 396-4000
   Facsimile (213) 291-9102
5
6  Proposed Attorneys for Debtor
   and Debtor in Possession
7
8             UNITED STATES BANKRUPTCY COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10               SANTA ANA DIVISION

11

12

13  THE LITTLE SAIGON NEWS        ) Case No.: 8:15-bk-11875 MW
    INCORPORATED,                 )
14                                )
                                  ) Chapter 11
15          Debtor and            )
            Debtor in Possession, ) NOTICE OF EMERGENCY MOTION AND
16                                ) EMERGENCY MOTION OF DEBTOR FOR
                                  ) AN ORDER (1) AUTHORIZING, BUT
17                                ) NOT REQUIRING, DEBTOR TO PAY
                                  ) PREPETITION (A) WAGES,
18                                ) SALARIES, AND OTHER
                                  ) COMPENSATION, (B) EMPLOYEE
19                                ) MEDICAL, WORKERS' COMPENSATION
                                  ) AND SIMILAR BENEFITS, AND (C)
20                                ) REIMBURSABLE EMPLOYEE EXPENSES;
                                  ) AND (2) AUTHORIZING AND
21                                ) DIRECTING APPLICABLE BANKS AND
                                  ) OTHER FINANCIAL INSTITUTIONS TO
22                                ) RECEIVE, PROCESS, HONOR, AND
                                  ) PAY CHECKS PRESENTED FOR
23                                ) PAYMENT AND TO HONOR FUND
                                  ) TRANSFER REQUESTS; MEMORANDUM
24                                ) OF POINTS AND AUTHORITIES IN
                                  ) SUPPORT THEREOF; DECLARATION OF
25                                ) BRIGITTE LAURE HUYNH
                                  )
26                                ) **HEARING:**
                                  ) **Date:**  April 15, 2015
27                                ) **Time:**  9:00 a.m.
                                  ) **Ctrm:**  6C
28  _____      ) **Place:** 411 West Fourth Street,
                                  )         Santa Ana, CA 92701

                           1

# TABLE OF CONTENTS

Page

I. STATEMENT OF FACTS .......................................5

    A. General Case Background ........................5

    B. Description of the Debtor's Business ..................5

    C. The Debtor's Capital Structure ........................6

    D. The Debtor's Secured Debt ...........................6

    E. The Debtor's Other Indebtedness .....................6

    F. The Debtor's Management and Circumstances Impacting Debtor's Operations .......................................6

    G. The Debtor's Workforce ..............................7

    H. Prepetition Wages ..................................9

    I. Employee Benefits ...............................11

II. ARGUMENT ..............................................12

    A. The Court Has Authority to Authorize Payment of Employee Obligations. .......................................13

    B. The Estate Will Suffer No Prejudice As a Result of the Motion Because the Prepetition Wages, Employee Benefits, and Employee Expenses are Priority Claims Under Bankruptcy Code Section 507(a)(4) ..................................16

    C. Honoring of Checks and Transfers Related to Employee Obligations and Maintenance of Payroll Accounts. ........18

III. CONCLUSION .............................................19

IIII. DECLARATION OF BRIGITTE HUYNH.........................20

    A. General Case Background.........................20

    B. Description of the Debtor's Business...................21

    C. The Debtor's Capital Structure.......................21

    D. The Debtor's Secured Debt..........................22

E. The Debtor's Other Indebtedness........................22

F. The Debtor's Management and Circumstances Impacting
Debtor's Operations......................................22

G. The Debtors Workforce.................................23

H. Prepetition Wages.....................................25

I. Employee Benefits.....................................27

## TABLE OF AUTHORITIES

Page

### CASES

*In re All Seasons Industries, Inc.*, 121 B.R. 822, 825-26 (Bankr. N.D. Ind. 1990)
.................................................18

*In re Chateaugay Corp.*, 116 B.R. 887, 989 (Bankr. S.D.N.Y. 1990)
.................................................13

*In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989)
.................................................14

*In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989)
.................................................13

*In re Pacific Forest Industries, Inc.*, 95 B.R. 740, 743 (Bankr. C.D. Cal. 1989)
.................................................18

### STATUTES

11 U.S.C. § 105(a)
.................................................13

11 U.S.C. § 507(a)(4)
.................................................16-7

**TO THE HON. MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE, CREDITORS HOLDING THE TWENTY LARGEST UNSECURED CLAIMS, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

PLEASE TAKE NOTICE that a hearing will be held on April 15, 2015 at 9:00 a.m. before the Honorable Mark S. Wallace, United States Bankruptcy Judge for the Central District of California, for the Court to consider the motion (the "Motion") filed by **The Little Saigon News Incorporated**, the chapter 11 debtor and Debtor in possession herein (the "Debtor"), for entry of an order pursuant to sections 105(a), 363(b), 507(a), 1107(a), and 1108 of Title 11 of the United States Code ("Bankruptcy Code"), (1) authorizing, but not directing, Debtor to pay or honor in its discretion certain Employee Obligations (defined herein) and (2) authorizing and directing the applicable banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and to honor all electronic payment requests made by the Debtor relating to the foregoing.

The Debtor employs twenty three (23) employees in the United States collectively ("Employees"). The Employees are all paid pursuant to the same payroll period timetable, as shown in the "Payroll Journal" attached as Exhibit "1" to the Declaration of Brigitte Laure Huynh ("**Huynh Declaration**"). The Debtor's employees are vital to the continued operation of the Debtor's

2

business and its successful reorganization. Payment of and otherwise honoring the employee obligations is necessary to continue the Debtor's business operations, and prevent Debtor's employees from experiencing extreme personal hardship or seeking employment elsewhere. Moreover, these claims are entitled to priority pursuant to sections 507(a)(4) and (a)(8) of the Bankruptcy Code and must be paid ahead of general unsecured claims; thus, Debtor's payment of the Employee Obligations in the ordinary course of business will not prejudice general unsecured creditors or materially affect the Debtor's bankruptcy estate.

**PLEASE TAKE FURTHER NOTICE** that if you wish to object to the relief sought by the Motion you must appear at the hearing. Your failure to timely object may be deemed by the Court to constitute consent to the relief requested herein.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Motion and attached Memorandum of Points and Authorities, the concurrently filed Huynh Declaration and evidence appended thereto, the arguments of counsel and other admissible evidence properly brought before the Court at or before the hearing on this Motion.

/ / /

/ / /

3

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order granting the Motion in its entirety and:

1. Authorizing, but not directing, Debtor to pay or honor in its discretion certain Employee Obligations more specifically described in the Motion,

2. Authorizing and directing the applicable banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and to honor all electronic payment requests made by the Debtor relating to the foregoing, and

3. Granting such other and further relief as the Court deems just and proper under the circumstances.


DATED: April 14, 2015                    PEÑA & SOMA, APC


                                         By: /S/ LEONARD PEÑA
                                             Leonard Peña
                                         Proposed Attorneys for
                                         Chapter 11 Debtor
                                         and Debtor in Possession

4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

**A. General Case Background.**

1.    On April 13, 2015, The Little Saigon News Incorporated a California corporation and the chapter 11 debtor and debtor in possession herein (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in the Debtor's chapter 11 case.

**B. Description of the Debtor's Business.**

2.    The Debtor is a self publisher of a weekly news magazine, The Little Saigon News.  The magazine is distributed in approximately 17 cities and tens of thousands of issues per week.  The Debtor was incorporated in California on January 28, 1999.  The Debtor's principal place of business is located at 13861 Seaboard Circle, Garden Grove, California 92843.

3.    For the fiscal year 2014, the Debtor's gross revenue was approximately $3.0 million. The Debtor's gross revenue for 2013 was $2.7 million. The Debtor's year to date revenue for 2015 is approximately $1,000,000.00

**C. The Debtor's Capital Structure.**

6. The Debtor is a California corporation and it is privately held. One hundred percent (100%) of the Debtor's shares are held by Brigitte Laure Huynh ("Huynh").[1]

**D. The Debtor's Secured Debt.**

7.    The Debtor has no secured creditors, thus there are no cash collateral issues.

**E. The Debtor's Other Indebtedness.**

8. The Debtor has approximately $4.7 million in general unsecured debt which is owed to approximately 14 entities. The bulk of the unsecured debt is owned to one judgment creditor in the amount of $4,500,000.00.

**F. The Debtor's Management and Circumstances Impacting**

   **Debtor's Operations.**

9. The Debtor's current Chief Executive Officer ("CEO") and President, Brigitte Laure Huynh, was appointed by the Board in 1999. Ms. Huynh's experience includes over 30 years in the publishing business, publishing daily, weekly and online publications.

10.    Although there have been some fluctuations in the Debtor's business over the years, the Debtor has been able to maintain its operations at a positive cash flow.

---

[1] Huynh is also a Chapter 11 Debtor in case number 8:15-bk-11876 MW, also pending before this Court.

6

11.  Unfortunately, in December 2014, after a protracted legal battle with one of its competitors, a judgment of $4,500,000.00 was entered against the Debtor and Huynh.  Pre-petition, the Debtor appealed the judgment, the appeal is pending and briefs have not yet been submitted to the Appellate Court.

12.  Due to the large amount of the judgment, it was financially impossible for the Debtor to post a bond to stay execution of the judgment.  At the same time, the judgment creditors sought to enforce the judgment by seeking turnover orders against the Debtor and Huynh.  If enforced, the turnover orders would have resulted in the closure of the Debtor's business operations.

**G. The Debtor's Workforce.**

13.  The Debtor employs eleven (11) salaried employees ("Salaried Employees").  The Salaried Employees are all paid pursuant to the same payroll period timetable, as shown in the "Payroll Journal" attached as Exhibit "1" to the Huynh Declaration.  Huynh, an insider, is one of these employees.

14.  The Debtor also employees twelve (12) commission based employees ("Commission Employees").  The Commission Employees are sales persons that sell advertising for the Debtor's weekly

magazine.  Advertising revenue is the Debtor's primary source of revenue.

15.   By the Motion, the Debtor seeks authority to immediately pay all obligations pertaining to non-insider Salaried and Commission Employees. With respect to Ms. Huynh Employees, no payments will be made until the expiration of the notice period with regard to the Notice of Insider Compensation filed for Ms. Huynh.

16.   As discussed further below, to minimize the hardship that the employees will suffer if prepetition obligations are not paid when due, and to avoid disruption of the Debtor's workforce as the Debtor pursues its reorganization efforts in this bankruptcy case, the Debtor seeks authority to pay certain prepetition claims for, among other items, wages, salaries, and other compensation including federal and state withholding taxes, payroll taxes and all other employment related benefits, which the Debtor pays or provides in the ordinary course (collectively, "Employee Obligations").

17.   In addition, the Debtor requests authority to pay the appropriate third parties the amounts that are deducted and withheld from employees' paychecks ("Employee Deductions"), which are in most instances not property of the bankruptcy estate, and to reimburse employees for expenses incurred by such

8

employees prepetition in the ordinary course of business ("Employee Expenses"). Generally, by way of this Motion, the Debtor seeks authority to pay or honor in its discretion the Employee Obligations, including the Employee Deductions and Employee Expenses with respect to Debtor's current employees, one of which is an insiders ("Employees").

18. Additionally, the Debtor seeks authority for and direction to applicable banks and other financial institutions, in accordance with the Debtor's instructions, to receive, process, honor, and pay all checks presented for payment and to honor all electronic payment requests made by the Debtor related to the Employee Obligations.

**H. Prepetition Wages.**

19. As discussed above, the Debtor employs 11 Salaried Employees and 12 Commission Employees.  The Debtor pays its employees for two weeks' work.

20. Typically, a few days prior to each payroll date, funds are transferred into the Debtor's payroll account to cover the payroll for the applicable periods.

21. Also, in the ordinary course of its business, the Debtor deducts from its employees' paychecks (as applicable): (a) payroll taxes and the employees' portion of FICA and unemployment taxes, (b) employee contributions for health and

9

disability related benefits, (c) employee contributions to

401(k) plans, and (e) other miscellaneous items (collectively,

"Employee Deductions"). The Debtor forwards amounts equal to the

Employee Deductions from its operating accounts to appropriate

third-party recipients.

22.   Under ordinary conditions, the Debtor's next payroll

for employees is scheduled for Wednesday, April 15, 2015, and

relates to the payroll period of April 1, 2015 through April 15,

2015. This payroll includes amounts for the prepetition period

of April 1, 2015 through and including April 12, 2015.

23.   However, given the fact that the Petition Date falls

within a new pay period, the Debtor respectfully seeks authority

to pay the prepetition payroll for the period of April 1, 2015

through April 12, 2015. The payroll amount associated with this

prepetition period of April 1, 2015 through April 12, 2015 is

expected to be in the aggregate amount of $22,724.91

("Prepetition Wages"). Attached to the Huynh Declaration as

Exhibits "1" are true and correct spreadsheets reflecting

payroll for the payroll period April 1, 2015 through April 12,

2015.

24.   In sum, the Debtor expects to owe approximately

$22,724.91 in Prepetition Wages. As of the Petition Date, no

employee has a claim of more than $12,475 in Prepetition Wages

on an individual basis.

26. The Debtor seeks authority to continue with its payroll

schedule in the ordinary course of its business and consequently

to pay all Prepetition Wages as planned on the dates indicated

above. In all instances, due to the fact that no single employee

has a claim of more than $12,475 in Prepetition Wages, the

Debtor will not make payroll distributions to any particular

employee in an amount that would exceed the allowable priority

portion of such employee's Prepetition Wages under section

507(a)(4) of the Bankruptcy Code. The Debtor asserts that the

costs associated with paying priority employee wage claims are

relatively minimal compared with the damage to the Debtor's

estate that would ensue if employee morale were disrupted by the

Debtor's failure to meet its payroll obligations.

25.  In addition, the Debtor requires authority pursuant to

section 507(a)(8) to pay or forward Employee Deductions, if any,

to the appropriate parties, including but not limited to all

priority payroll taxes associated with the Prepetition Wages.

**I. Employee Benefits.**

26.  The Debtor pays no benefits other than those required

by law, i.e. workers compensation insurance.

11

27.  the Debtor is obligated to pay worker's compensation insurance premiums for its employees. Debtor seeks authority to pay this obligation in the ordinary course of its business as part of its employee obligations.

## II.

### ARGUMENT

34. Due to the timing of the commencement of this case, certain employees accrued prepetition salaries and wages for which payment would otherwise be made post petition. Other forms of compensation related to prepetition services, more fully described above, have not yet been paid to or for the benefit of the employees because such benefits, although accrued either in whole or in part prior to the Petition Date, were not payable at such time, but rather will become payable in the immediate future in the ordinary course of business. The Debtor submits that the Court has authority to authorize the relief requested herein in light of the prejudice that will result to the Debtor if it is not permitted to honor and pay the employee obligations. Furthermore, no prejudice will result to the Debtor's bankruptcy estate because the employee obligations are priority claims under Bankruptcy Code section 507(a)(4), which are paid prior to payments to general unsecured creditors.

**A. The Court Has Authority to Authorize Payment of Employee Obligations.**

35. Pursuant to section 105(a) of the Bankruptcy Code, the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Where business exigencies require, courts have exercised their equitable powers under section 105(a) to authorize debtors to pay prepetition claims of particular creditors essential to continued operations, including those of employee claims for prepetition wages. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989). This "necessity of payment doctrine," which empowers courts to authorize a debtor to pay prepetition claims, is critical to any nonliquidating chapter 11 case, because it permits "'immediate payment of claims of creditors where those creditors will not supply services or materials essential to the conduct of the business until their pre-reorganization claims have been paid.'" *Id.* at 176 (*quoting In re Lehigh & New England Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981)). Indeed, continued operation and rehabilitation of the debtor is a paramount goal in chapter 11 bankruptcies. *See In re Ionosphere Clubs, Inc.*, 98 B.R. at 176. *See also In re Chateaugay Corp.*, 116 B.R. 887, 989 (Bankr.

13

S.D.N.Y. 1990) ("[E]mployee good will and contentment is an asset which is vital to the continuation of a debtor's business operation and its ability to effectively reorganize during the Chapter 11 process."); *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (payment of employee prepetition wages is permissible in light of the fact that "retention of skills, organization, and reputation for performance must be considered valuable assets contributing to going concern value and aiding rehabilitation where that is possible").

36.   Furthermore, Bankruptcy Courts in the Central District of California authorize a debtor's payment of prepetition wages and obligations where such request is supported by evidence that establishes the following:

(A) The employees are still employed;

(B) The necessity for payment;

(C) The benefit of the procedures;

(D) The prospect of reorganization;

(E) Whether the employees are insiders;

(F) Whether the employees' claims are within the limits established by section 507 of the Bankruptcy Code; and

(G) The payment will not render the estate administratively insolvent.

14

*See* Local Bankruptcy Rule 2080-1(a)(6). The Debtor respectfully submits that the relief requested herein is appropriate and necessary in light of the foregoing.

37.   As noted above, the Debtor's goal in this chapter 11 case is to reorganize its affairs and continue operating as a successful publisher. It is imperative to the accomplishment of Debtor's goals in this case that the Debtor's employees make a smooth transition into the chapter 11 process. Any disruption to payment of employee obligations will prove destructive to the Debtor's goals herein because it will hurt employee morale at a particularly sensitive time for all employees, especially considering the small number of employees employed by the Debtor. Indeed, each employee is crucial to the continuation of Debtor's business operations.

38.   Due to the timing of the filing of this case, certain employee obligations may have accrued, but were unpaid prior to the Petition Date. If the Debtor is not permitted to meet all payroll-related obligations in the ordinary course of business, the Debtor could suffer unmanageable employee outrage or turnover to the detriment of all parties to the Debtor's bankruptcy estate. Any significant disruption will adversely impact the Debtor's business and result in immediate and irreparable harm to the estate. Simply put, Debtor's Employees

are essential to the Debtor being able to continue its business operations and thus successfully reorganize.

39.   The Debtor submits that the amounts to be paid pursuant to the employee obligations are relatively small in light of the importance and necessity of preserving the Employees' services and morale, and the difficulties and losses the Debtor will suffer if employees leave. Even the slightest delay in providing this relief to its employees will hamper operations and damage the Debtor's estate. These payments will not render this estate administratively insolvent.

40.   Additionally, the Debtor proposes to make immediate payment of employee obligations for non-insider employees only, all of whom are currently employed by the Debtor. The Debtor will not make payments to insider employees until after the notice period has passed regarding the Notices of Insider Compensation filed concurrently herewith.

**B. The Estate Will Suffer No Prejudice As a Result of the Motion Because the Prepetition Wages, Employee Benefits, and Employee Expenses are Priority Claims Under Bankruptcy Code Section 507(a)(4).**

41.   Furthermore, the bankruptcy estate—specifically the general unsecured creditors of this case—will suffer no prejudice if the relief requested herein is granted because the

Prepetition Wages, Employee Benefits, and Employee Expenses are entitled to a priority under section 507(a)(4) of the Bankruptcy Code. Indeed, each Employee is entitled to a priority claim for:

> [A]llowed unsecured claims, but only to the extent of $12,475 . . . earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business,whichever occurs first, for-
>
> (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>
> (B) sales commissions earned by an individual . . . acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

11 U.S.C. § 507(a)(4). To the extent the Prepetition Wages and related payments for which the Debtor seeks authority to pay were earned within 180 days of the Petition Date, Employees' claims for payment of such compensation are entitled to priority pursuant to the above. The Debtor's request for authority to pay these claims now therefore merely constitutes a request to accelerate payment to avoid the devastation of employee morale and the operation of Debtor's business. Moreover, the maintenance of Employee morale and adequate staffing preserves the going concern value of the business which ultimately inures to the benefit of Debtor's creditors.

17

41.   The Debtor's relationship with its Employees, including the terms and conditions of their employment, are matters subject to the Debtor's business judgment and may be managed by the Debtor in the ordinary course of its business. *See In re All Seasons Industries, Inc.*, 121 B.R. 822, 825-26 (Bankr. N.D. Ind. 1990); *In re Pacific Forest Industries, Inc.*, 95 B.R. 740, 743 (Bankr. C.D. Cal. 1989) ("Employees do not need court permission to be paid and are usually paid as a part of the ongoing operation of the business.").

### C. Honoring of Checks and Transfers Related to Employee Obligations and Maintenance of Payroll Accounts.

42.   Finally, the Debtor requests that all applicable banks and other financial institutions be authorized and directed to receive, process, honor, and pay all checks presented for payment and to honor all transfer requests made by the Debtor related to Employee Obligations, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date (including checks that have been presented and dishonored). The Debtor represents that these checks are drawn on an identifiable payroll account. Accordingly, checks other than those for Employee Obligations will not be honored inadvertently. The Debtor has

sufficient funds to pay all employee obligations on an ongoing basis and in the ordinary course of business.

## III.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order granting the Motion in its entirety and:

1.   Authorizing, but not directing, Debtor to pay or honor in its discretion the Employee Obligations,

2.   Authorizing and directing the applicable banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and to honor all electronic payment requests made by the Debtor relating to the foregoing, and

3.   Granting such other and further relief as the Court deems just and proper under the circumstances.

DATED: April 14, 2015          PEÑA & SOMA, APC


                               By: /S/ LEONARD PEÑA
                                   Leonard Peña
                               Proposed Attorneys for
                               Chapter 11 Debtor
                               and Debtor in Possession

19

## DECLARATION OF BRIGITTE HUYNH

I, Brigitte Huynh, declare:

1.    I am an individual over the age of eighteen years, and have served as the Chief Executive Officer ("CEO") and President of The Little Saigon News Incorporated, the chapter 11 debtor and debtor in possession ("Debtor") of the above-entitled bankruptcy case, since 1999. The facts contained herein are based upon my personal knowledge or based upon the documents I review in the regular course of my duties as CEO and President and, if called as a witness, I would and could competently testify thereto.

2.    I make this declaration in support of the concurrently filed emergency motions For Order Authorizing, But Not Requiring, Debtor to Pay Prepetition (A) Wages, Salaries, and Other Compensation, (B) Employee Medical and Similar Benefits, and (C) Reimbursable Employee Expenses; and (2) Authorizing and Directing Applicable Banks and Other Financial Institutions to Receive, Process, Honor, and Pay Checks Presented for Payment and to Honor Fund Transfer Requests Relating to the Foregoing (the "Prepetition Wage Motion").

**A. General Case Background.**

3.    On April 13, 2015, The Little Saigon News Incorporated a California corporation and the chapter 11 debtor and debtor in

possession herein (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in the Debtor's chapter 11 case.

**B. Description of the Debtor's Business.**

4.   The Debtor is a self publisher of a weekly news magazine, The Little Saigon News.  The magazine is distributed in approximately 17 cities and tens of thousands of issues per week.  The Debtor was incorporated in California on January 28, 1999.  The Debtor's principal place of business is located at 13861 Seaboard Circle, Garden Grove, California 92843.

5.   For the fiscal year 2014, the Debtor's gross revenue was approximately $3.0 million. The Debtor's gross revenue for 2013 was $2.7 million. The Debtor's year to date revenue for 2015 is approximately $1,000,000.00.

**C. The Debtor's Capital Structure.**

6. The Debtor is a California corporation and it is privately. One hundred percent (100%) of the Debtor's shares are held by me, Brigitte Laure Huynh ("Huynh").[2]

/ / /

---

[2] I am also a Chapter 11 Debtor in case number 8:15-bk-11876 MW, also pending before this Court.

**D. The Debtor's Secured Debt.**

7.    The Debtor has no secured creditors, thus there are no cash collateral issues.

**E. The Debtor's Other Indebtedness.**

8.    The Debtor has approximately $4.7 million in general unsecured debt which is owed to approximately 14 entities. The bulk of the unsecured debt is owned to one judgment creditor in the amount of $4,500,000.00.

**F. The Debtor's Management and Circumstances Impacting Debtor's Operations.**

9.    I am the Debtor's current Chief Executive Officer ("CEO") and President, was appointed by the Board in 1999. My experience includes over 30 years in the publishing business, publishing daily, weekly and online publications.

10.   Although there have been some fluctuations in the Debtor's business over the years, the Debtor has been able to maintain its operations at a positive cash flow.

11.   Unfortunately, in December 2014, after a protracted legal battle with one of the company's competitors, a judgment of $4,500,000.00 was entered against the Debtor and me. Pre-petition, the Debtor appealed the judgment, the appeal is pending and briefs have not yet been submitted to the Appellate Court.

22

12.   Due to the large amount of the judgment, it was financially impossible for the Debtor to post a bond to stay execution of the judgment.  At the same time, the judgment creditors sought to enforce the judgment by seeking turnover orders against the Debtor and me.  If enforced, the turnover orders would have resulted in the closure of the Debtor's business operations.

**G. The Debtor's Workforce.**

13.   The Debtor employs eleven (11) salaried employees ("Salaried Employees").  The Salaried Employees are all paid pursuant to the same payroll period timetable, as shown in the "Payroll Journal" attached as Exhibit "1".

14.   The Debtor also employees twelve (12) commission based employees ("Commission Employees").  The Commission Employees are sales persons that sell advertising for the Debtor's weekly magazine.  Advertising revenue is the Debtor's primary source of revenue.

15.   The Debtor seeks authority to immediately pay all obligations pertaining to non-insider Salaried and Commission Employees. With respect to myself, no payments will be made until the expiration of the notice period with regard to the Notice of Insider Compensation filed for my wages.

23

16.  I believe that in order to minimize the hardship that the employees will suffer if prepetition obligations are not paid when due, and to avoid disruption of the Debtor's workforce as the Debtor pursues its reorganization efforts in this bankruptcy case, the Debtor seeks authority to pay certain prepetition claims for, among other items, wages, salaries, and other compensation including federal and state withholding taxes, payroll taxes, and all other employment related benefits, which the Debtor pays or provides in the ordinary course (collectively, "Employee Obligations").

17.  In addition, the Debtor requests authority to pay the appropriate third parties the amounts that are deducted and withheld from employees' paychecks ("Employee Deductions"), which are in most instances not property of the bankruptcy estate.  Generally, by way of this Motion, the Debtor seeks authority to pay or honor in its discretion the Employee Obligations, including the Employee Deductions with respect to Debtor's current employees, one of which is an insider ("Employees").

18.  Additionally, the Debtor seeks authority for and direction to applicable banks and other financial institutions, in accordance with the Debtor's instructions, to receive, process, honor, and pay all checks presented for payment and to

honor all electronic payment requests made by the Debtor related to the employee obligations.

### H. Prepetition Wages.

19.   As discussed above, the Debtor employs 11 Salaried Employees and 14 Commission Employees.  The Debtor pays its employees for two weeks' work.

20.   Typically, a few days prior to each payroll date, funds are transferred into the Debtor's payroll account to cover the payroll for the applicable periods.

21.   Also, in the ordinary course of its business, the Debtor deducts from its employees' paychecks (as applicable): (a) payroll taxes and the employees' portion of FICA and unemployment taxes, (b) employee contributions for health and disability related benefits, (c) other miscellaneous items (collectively, "Employee Deductions"). The Debtor forwards amounts equal to the Employee Deductions from its operating accounts to appropriate third-party recipients.

22.   Under ordinary conditions, the Debtor's next payroll for employees is scheduled for Wednesday, April 15, 2015, and relates to the payroll period of April 1, 2015 through April 15, 2015. This payroll includes amounts for the prepetition period of April 1, 2015 through and including April 12, 2015.

23.   However, given the fact that the Petition Date falls within a new pay period, the Debtor respectfully seeks authority to pay the prepetition payroll for the period of April 1, 2015 through April 12, 2015. The payroll amount associated with this prepetition period of April 1, 2015 through April 12, 2015 is expected to be in the aggregate amount of $22,724.91 ("Prepetition Wages"). Attached to the Huynh Declaration as Exhibits "1" are true and correct spreadsheets reflecting payroll for the payroll period April 1, 2015 through April 12, 2015, for both Salaried and Commissioned Employees.

24.   In sum, the Debtor expects to owe approximately $22,724.91 in Prepetition Wages. As of the Petition Date, no employee has a claim of more than $12,475 in Prepetition Wages on an individual basis.

25. The Debtor seeks authority to continue with its payroll schedule in the ordinary course of its business and consequently to pay all Prepetition Wages as planned on the dates indicated above. In all instances, due to the fact that no single employee has a claim of more than $12,475 in Prepetition Wages, the Debtor will not make payroll distributions to any particular employee in an amount that would exceed the allowable priority portion of such employee's Prepetition Wages under section 507(a)(4) of the Bankruptcy Code. The Debtor asserts that the

costs associated with paying priority employee wage claims are

relatively minimal compared with the damage to the Debtor's

estate that would ensue if employee morale were disrupted by the

Debtor's failure to meet its payroll obligations.

26.   In addition, the Debtor requires authority pursuant to

section 507(a)(8) to pay or forward Employee Deductions, if any,

to the appropriate parties, including but not limited to all

priority payroll taxes associated with the Prepetition Wages.

**I. Employee Benefits.**

27.   The Debtor pays no benefits other than those required

by law, i.e. workers compensation insurance.

28.   The Debtor is obligated to pay worker's compensation

insurance premiums for its employees. Debtor seeks authority to

pay this obligation in the ordinary course of its business as

part of its employee obligations.

29.   The Debtor has sufficient funds on hand to meet its

payroll obligations, and the Debtor continues to operate and

generate income on a daily basis in an amount sufficient to meet

its monthly business expense obligations.

30.   But for the large judgment entered against the

company, the Debtor has had no problem meeting its obligations.

31.   I am hopeful that the Debtor's appeal of the judgment

will be successful on appeal, if not, I believe that the Debtor

generates sufficient income that it will be able to propose a repayment of the judgment over a reasonable period of time, a reorganization may also include a sale of part of or all of the assets of the corporation.

32.   The payment of wages and other related expenses will not render the estate insolvent in that there are sufficient monies on deposit in the Debtor's prepetition accounts to pay the current payroll obligations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of April, 2015, at Garden Grove, California.

DECLARANT'S SIGNATURE ON NEXT PAGE. THIS PAGE LEFT HERE FOR EASIER READING

BRIGITTE LAURE HUYNH

repayment of the judgment over a reasonable period of time, a reorganization may also include a sale of part of or all of the assets of the corporation.

32. The payment of wages and other related expenses will not render the estate insolvent in that there are sufficient monies on deposit in the Debtor's prepetition accounts to pay the current payroll obligations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of April, 2015, at Garden Grove, California.

BRIGITTE LAURE HUYNH

28

Exhibit 1

Salary

## Prepetition Wages for the period of 4/01/2015-4/12/2015

| Employee | Gross Wages |
|---|---|
| Ho, Na | $ 640.00 |
| Huynh, Brigitte | $ 1,333.33 |
| Le, Binh V. | $ 800.00 |
| Le, Khoa D. | $ 896.00 |
| Miramontes, Israel | $ 1,983.33 |
| Nguyen, Tan Q. | $ 576.00 |
| Tran, Natalie | $ 768.00 |
| Tran, Tram | $ 960.00 |
| Diaz Villagran, Manuel | $ 896.00 |
| Espana, Vicente | $ 704.00 |
| Figueroa, Erick | $ 928.00 |
| | $ 10,484.66 |

Commission

## Pre-petition commission Employees & Pre-petition wages

| | | | |
|---|---|---|---|
| 4/15/2015 | $600.00 | Tuyen Cao | 4/15/2015 |
| 4/15/2015 | $2,246.00 | Thung Nguyen | 4/15/2015 |
| 4/15/2015 | $1,237.50 | Steve Holliday | 4/15/2015 |
| 4/15/2015 | $650.00 | Steve Holliday | 4/15/2015 |
| 4/15/2015 | $1,119.00 | Sanh Hoang | 4/15/2015 |
| 4/15/2015 | $240.00 | Quang Tang | 4/15/2015 |
| 4/15/2015 | $754.00 | Mike Chinh Ly | 4/15/2015 |
| 4/15/2015 | $801.00 | Lan Lee | 4/15/2015 |
| 4/15/2015 | $1,078.00 | Kieu Ho | 4/15/2015 |
| 4/15/2015 | $600.00 | Hung Bui | 4/15/2015 |
| 4/15/2015 | $1,259.00 | Francesca Nguyen | 4/15/2015 |
| 4/15/2015 | $647.00 | Co Quach | 4/15/2015 |
| 4/15/2015 | $1,008.75 | AnhTuan Nguyen | 4/15/2015 |

# PAYROLL JOURNAL

0080 A800-9139   Little Saigon News Incorporated

**** 100 WRITERS-OFFICE WORKERS

| EMPLOYEE NAME / ID | DESCRIPTION | RATE | HOURS | EARNINGS | REIMB & OTHER PAYMENTS | WITHHOLDINGS | DEDUCTIONS | NET PAY ALLOCATIONS |
|---|---|---|---|---|---|---|---|---|
| Ho, Na 4 | Hourly | 10.0000 | 96.00 | 960.00 | | Social Security 59.52 / Medicare 13.92 / Fed Income Tax 43.50 / CA Income Tax 5.41 / CA Disability 8.64 | | Readychex # 2996800186 829.01 / Check Amt 829.01 |
| | EMPLOYEE TOTAL | | 96.00 | 960.00 | | 130.99 | | |
| Huynh, Brigitte 6 | Salary | | | 2,000.00 | | Social Security 124.00 / Medicare 29.00 / Fed Income Tax 259.11 / CA Income Tax 72.55 / CA Disability 18.00 | | Net Pay 829.01 / Direct Deposit # 50009  0.00 / Check Amt 1,497.34 / Chkg 6366 |
| | EMPLOYEE TOTAL | | | 2,000.00 | | 502.66 | | |
| Le, Binh V 18 | Salary | | | 1,200.00 | | Social Security 74.40 / Medicare 17.40 / Fed Income Tax 50.83 / CA Income Tax 2.08 / CA Disability 10.80 | | Net Pay 1,497.34 / Readychex # 2996800187 1,044.49 / Check Amt 1,044.49 |
| | EMPLOYEE TOTAL | | | 1,200.00 | | 155.51 | | |
| Le, Khoa D 8 | Hourly | 14.0000 | 96.00 | 1,344.00 | | Social Security 83.33 / Medicare 19.49 / Fed Income Tax 65.23 / CA Income Tax 5.25 / CA Disability 12.10 | | Net Pay 1,044.49 / Readychex # 2996800188 1,158.60 / Check Amt 1,158.60 |
| | EMPLOYEE TOTAL | | 96.00 | 1,344.00 | | 185.40 | | |
| Miramontes, Israel 11 | Salary | | | 2,976.00 | | Social Security 184.45 / Medicare 43.14 / Fed Income Tax 279.06 / CA Income Tax 65.60 / CA Disability 26.78 | | Net Pay 1,158.60 / Readychex # 2996800189 2,375.97 / Check Amt 2,375.97 |
| | EMPLOYEE TOTAL | | | 2,976.00 | | 599.03 | | |
| Nguyen, Tan Q 13 | Hourly | 9.0000 | 92.50 | 832.50 | | Social Security 51.61 / Medicare 12.07 / Fed Income Tax 30.75 / CA Income Tax 2.60 / CA Disability 7.49 | | Net Pay 2,375.97 / Readychex # 2996800190 727.98 / Check Amt 727.98 |
| | EMPLOYEE TOTAL | | 92.50 | 832.50 | | 104.52 | | |
| Tran, Natalie 15 | Hourly | 12.0000 | 40.00 | 480.00 | | Social Security 29.76 / Medicare 6.96 / Fed Income Tax 12.17 | | Net Pay 727.98 / Readychex # 2996800191 / Check Amt 426.79 |

# PAYROLL JOURNAL

0080 A800-9139  Little Saigon News Incorporated

**** 100 WRITERS-OFFICE WORKERS (cont.)

**** 200 PRINTING

| EMPLOYEE NAME / ID | Description | Rate | Hours | Earnings | Reimb & Other Payments | Withholdings | Deductions | Net Pay Allocations |
|---|---|---|---|---|---|---|---|---|
| Tran, Natalle (cont.) 15 | | | | | | CA Disability 4.32 | | Net Pay 426.79 |
| | EMPLOYEE TOTAL | | 48.00 | 480.00 | | 53.21 | | |
| Tran, Tram 16 | Hourly | 15.0000 | 96.00 | 1,440.00 | | Social Security 88.28 | | Readychex # 2996800192 |
| | | | | | | Medicare 20.88 | | Check Amt 1,097.88 |
| | | | | | | Fed Income Tax 182.41 | | |
| | | | | | | CA Income Tax 37.09 | | |
| | | | | | | CA Disability 12.96 | | |
| | EMPLOYEE TOTAL | | 96.00 | 1,440.00 | | 342.62 | | Net Pay 1,097.88 |
| Diaz Villagran, Manual 1 | Hourly | 14.0000 | 96.00 | 1,344.00 | | Social Security 83.33 | | Readychex # 2996800193 |
| | | | | | | Medicare 19.48 | | Check Amt 1,158.61 |
| | | | | | | Fed Income Tax 65.23 | | |
| | | | | | | CA Income Tax 5.25 | | |
| | | | | | | CA Disability 12.10 | | |
| | EMPLOYEE TOTAL | | 96.00 | 1,344.00 | | 185.39 | | Net Pay 1,158.61 |
| Espana, Vicente 2 | Hourly | 11.0000 | 96.00 | 1,056.00 | | Social Security 65.47 | | Readychex # 2996800194 |
| | | | | | | Medicare 15.31 | | Check Amt 945.95 |
| | | | | | | Fed Income Tax 18.77 | | |
| | | | | | | CA Disability 9.50 | | |
| | EMPLOYEE TOTAL | | 96.00 | 1,056.00 | | 110.05 | | Net Pay 945.95 |
| Figueroa, Erick 3 | Hourly | 14.5000 | 96.00 | 1,392.00 | | Social Security 86.31 | | Readychex # 2996800195 |
| | | | | | | Medicare 20.18 | | Check Amt 1,218.26 |
| | | | | | | Fed Income Tax 53.37 | | |
| | | | | | | CA Income Tax 1.35 | | |
| | | | | | | CA Disability 12.53 | | |
| | EMPLOYEE TOTAL | | 96.00 | 1,392.00 | | 173.74 | | Net Pay 1,218.26 |
| COMPANY TOTALS | Hourly | | 708.50 | 8,848.50 | | Social Security 931.46 | | Check Amt 10,983.04 |
| 11 Person(s) | Salary | | | 6,175.00 | | Medicare 217.83 | | Dir Dep 1,497.34 |
| 11 Transaction(s) | | | | | | Fed Income Tax 1,061.43 | | |
| | | | | | | CA Income Tax 197.18 | | |
| | | | | | | CA Disability 135.22 | | |
| | COMPANY TOTAL | | 708.50 | 15,023.50 | | 2,543.12 | | Net Pay 12,480.38 |

# PAYROLL JOURNAL

0080 A800-9139  Little Saigon News Incorporated

**EMPLOYEE NAME**
ID

### HOURS, EARNINGS, REIMBURSEMENTS & OTHER PAYMENTS

| DESCRIPTION | RATE | HOURS | EARNINGS | REIMB & OTHER PAYMENTS |
|---|---|---|---|---|

### WITHHOLDINGS

*Employer Liabilities*

| | |
|---|---|
| Social Security | 931.46 |
| Medicare | 217.84 |
| Fed Unemploy | 26.43 |
| CA Unempoy | 272.95 |
| TOTAL EMPLOYER LIABILITY | 1,448.68 |
| TOTAL TAX LIABILITY | 3,991.80 |

### DEDUCTIONS

### NET PAY ALLOCATIONS

(C) = Independent Contractor

| In re: | CHAPTER: **11** |
|---|---|
| **The Little Saigon News Incorporated** | CASE NUMBER: **8:15-bk-11875** |
| Debtor(s). | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**PEÑA & SOMA, APC**
**402 South Marengo Ave., Suite B**
**Pasadena, CA 91101**

A true and correct copy of the foregoing document entitled (*specify*):   **Notice Of Emergency Motion And Emergency Motion Of Debtor For An Order (1) Authorizing , But Not Requiring, Debtor To Pay Prepetition (A) Wages, Salaries, And Other Compensation And Similar Benefits, And (C) Reimbursable Employee Expenses; And (2) Authorizing And Directing Applicable Banks And Other Financial Institutions To Receive, Process, Honor, And Pay Checks Presented For Payment And To Honor Fund Transfer Request; Memorandum Of Points And Authorities In Support Thereof**    will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On   **4/14/2015**   , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee (SA): ustpregion16.sa.ecf@usdoj.gov
☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On   **4/14/2015**   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on   **4/14/2015**   , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
**Personal Delivery**
**Honorable Judge Mark S. Wallace**
**United States Bankruptcy Court**
**411 West Fourth Street, Suite 6135 / Courtroom 6C**
**Santa Ana, CA 92701-4593**

**Hoyt Elvin Hart II for judgment creditors (Vinh Hoang, Dat Huy Phan, Nguoi Viet Daily News, Inc.: hoyth@prodigy.net**

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| Date | Printed Name | Signature |
|---|---|---|
| April 14, 2015 | Leonor Arteaga | /s/ Leonor Arteaga |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**ALL THESE CREDITORS SERVED VIA OVERNIGHT DELIVER FOR EARLY MORNING DELIVERY**

Bank of America
PO Box 60069
City Of Industry, CA 91716-0068

American Express
Box 0001
Los Angeles, CA 90096-0001

An Quoc Nguyen
415 South 49th Street
Philadelphia, PA 19143

Dat Huy Phan
14771 Moran Street
Westminster, CA 92683

CitiCards
PO Box 6000
The Lakes, NV 89163-6000

Dat Huy Phan
Hoyt Elvin Hart II
PO Box 675670
Rancho Santa Fe, CA 92067

Franchise Tax Board
Attn Bankruptcy
PO Box 2952
Sacramento, CA 95812-2952

Employment Development Department
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Forward Air, Inc.
PO Box 1058
Greeneville, TN 37744

Internal Revenue Service
PO Box 21126
Philadelphia, PA 19114

General Newsprint, Inc.
888 West Crowther Ave.
Placentia, CA 92870

Nam Quoc Nguyen
17614 Laguna Trail Drive
Houston, TX 77095

Nguoi Viet News, Inc.
Hoyt Elvin Hart II
PO Box 675670
Rancho Santa Fe, CA 92067

Kim Anh Ngyuen
415 South 49th Street
Philadelphia, PA 19143

Ricardo Zapata
Ricardo A. Torres APLC
2677 N Main Stret Suite 100
Santa Ana, CA 92705

Vinh Hoang
Hoyt Elvin Hart II
PO Box 675670
Rancho Santa Fe, CA 92067

Orange County Sheriffs Department
11100 Cedar Street
Stanton, CA 90680

WKS Properties, LLC
a California Limited Liability Comp
17910 Pint Reyes Street
Fountain Valley, CA 92708