HOYT E. HART II, SBN 125088, hoyth@prodigy.net
ATTORNEY AT LAW
P.O. Box 675670
Rancho Santa Fe, CA  92067
Telephone:    858.756.1636
Facsimile:    858.756.1407

CRAIG H. MILLET, SBN 106027, cmillet@gibsondunn.com
DOUGLAS LEVIN, SBN 263951, dlevin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone:  949.451.3800
Facsimile:  949.451.4220

Attorneys for Plan Proponents the NV Creditors

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITTLE SAIGON NEWS INCORPORATED,<br><br>                    Debtor.<br>-------------------------------------------------<br>In re:<br><br>BRIGITTE LAURE HUYNH,<br><br>                    Debtor.<br>-------------------------------------------------<br>AFFECTS ONLY DEBTOR LITTLE SAIGON NEWS INCORPRATED. | CASE NO. 8:15-bk-11875-MW<br><br>Chapter 11<br><br>Jointly Administered with<br>Case No. 8:15-bk-11876-MW<br><br>**MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE NV CREDITORS' CHAPTER 11 PLAN OF REORGANIZATION FOR DEBTOR LITTLE SAIGON NEWS DATED SEPTEMBER 29, 2015 PURSUANT TO SECTION 1129(a)**<br><br>**Hearing:**<br>Date:       February 3, 2016<br>Time:      2:00 p.m.<br>Place:     Courtroom 6C<br>Judge:    Hon. Mark S. Wallace |

# TABLE OF CONTENTS

Page

I. INTRODUCTION – THIS MEMORANDUM ADDRESSES THE ELEMENTS OF SECTION 1129(a) ............................................................................................... 1

II. PERTINENT PROCEDURAL HISTORY ........................................................... 1

III. PERTINENT BACKGROUND FACTS ............................................................. 2

    A.    Description of the Debtor and Insiders Brigitte Huynh and Joseph Le ........ 2

    B.    Description of Plan Proponents – the NV Creditors ...................................... 3

    C.    The Judgment Against the Debtor and in Favor of the Judgment Creditors ............ 3

    D.    Overview of the Plan ...................................................................................... 4

    E.    The Plan's Voting Results .............................................................................. 5

IV. THE PLAN SATISFIES ALL REQUIREMENTS OF BANKRUPTCY CODE SECTION 1129(A), OTHER THAN 1129(A)(8) AS TO CLASSES TO DEEMED TO REJECT THE PLAN ........................................................................ 5

    A.    Section 1129(a)(1): The Plan Complies With All Applicable Provisions Of The Bankruptcy Code .............................................................. 5

          1.    Section 1122: Classification of Claims and Interests ...................... 6

          2.    Section 1123: Contents of the Plan ................................................. 8

    B.    Section 1129(a)(2): The Debtors Have Complied with the Provisions of the Bankruptcy Code ...................................................................................... 10

    C.    Section 1129(a)(3): The Plan Has Been Proposed In Good Faith And Not By Any Means Forbidden By Law .............................................................. 11

    D.    Section 1129(a)(4): Compensation of Professionals Will Remain Subject to Court Approval .............................................................................. 12

    E.    Section 1129(a)(5): The Debtors Have Disclosed All Necessary Information Regarding Directors, Officers, and Insiders ................................ 12

    F.    Section 1129(a)(7): The Plan Is In The Best Interests Of All Creditors And Interest Holders In The Debtors .............................................................. 13

    G.    Section 1129(a)(8): All Impaired Classes Either Voted To Accept The Plan Or The Debtors Will Meet The Requirements of Section 1129(b) with Respect to Such Classes ............................................................................ 14

    H.    Section 1129(a)(9): The Plan Provides for the Payment in Full Of All Allowed Priority Claims .............................................................................. 15

    I.    Section 1129(a)(10): At Least One Class Of Impaired Claims Has Accepted The Plan .......................................................................................... 16

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS
(continued)

Page

J.    Section 1129(a)(11): The Plan Is Not Likely To Be Followed By Liquidation Or The Need For Further Financial Reorganization .................................................. 17

K.    Section 1129(a)(12): All Statutory Fees Have Been Or Will Be Paid ...................... 18

V. THE PLAN SATISFIES THE ELEMENTS OF "CRAM DOWN" UNDER SECTION 1129(B) ..................................................................................................................... 18

VI. CONCLUSION ................................................................................................................ 19

Gibson, Dunn & Crutcher LLP

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*In re Acequia, Inc.,*
5
    787 F.2d 1352 (9th Cir. 1986)................................................................17

6

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,*
    526 U.S. 434 (1999)................................................................13

7

*In re Barakat,*
8
    99 F.3d 1520 (9th Cir. 1996)................................................................6

9

*Computer Task Group, Inc. v. Brotby (In re Brotby),*
    303 B.R. 177 (B.A.P. 9th Cir. 2003)................................................................17
10

11

*In re Consol. Water Utilities, Inc.,*
    217 B.R. 588 (B.A.P. 9th Cir. 1998)................................................................13

12

*In re Coram Healthcare Corp.,*
13
    271 B.R. 228 (Bankr. D. Del. 2001) ................................................................11

14

*In re Drexel Burnham Lambert Group, Inc.,*
    138 B.R. 723 (Bankr. S.D.N.Y. 1992)................................................................6
15

16

*In re EBP, Inc.,*
    172 B.R. 241 (Bankr. N.D. Ohio 1994) ................................................................6, 7

17

*In re Elsinore Shore Assocs.,*
18
    91 B.R. 238 (Bankr. D. N.J. 1988)................................................................12

19

*F.H. Partners, L.P. v. Inv. Co. of the Southwest, Inc. (In re Inv. Co. of the Southwest, Inc.),*
20
    341 B.R. 298 (B.A.P. 10th Cir. 2006)................................................................17

21

*Florida Partners Corp. v. Southeast Co. (In re Southeast Co.),*
22
    868 F.2d 335 (9th Cir. 1988)................................................................8

23

*In re Genesis Health Ventures, Inc.,*
    266 B.R. 591 (Bankr. D. Del. 2001) ................................................................5
24

*In re Greate Bay Hotel & Casino, Inc.,*
25
    251 B.R. 213 (Bankr. D. N.J. 2000)................................................................6

26

*In re Jersey City Med. Ctr.,*
    817 F.2d 1055 (3d Cir. 1987)................................................................6
27

28

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),*
    843 F.2d 636 (2d Cir. 1988)................................................................5, 17

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Loop 76, LLC,*
    465 B.R. 525 (B.A.P. 9th Cir. 2012) .......................................................................6

*In re Melcher,*
    329 B.R. 865 (Bankr. N.D. Cal. 2005) ...................................................................17

*In re Mirant Corp.,*
    03-46590, 2007 Bankr. LEXIS 4951 (Bankr. N.D. Tex. Apr. 27, 2007)................15

*In re Patrician St. Joseph Partners, Ltd.,*
    169 B.R. 669 (D. Ariz. 1994) ................................................................................17

*In re Pikes Peak Water Co.,*
    779 F.2d 1456 (10th Cir. 1985)..............................................................................13

*Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza L.P.),*
    314 F.3d 1070 (9th Cir. 2002) ...............................................................................11

*In re Provident Royalties, LLC,*
    No. 09-33886, 2010 Bankr. LEXIS 1947 (Bankr. N.D. Tex. June 10, 2010)................15

*In re PWS Holding Corp.,*
    228 F.3d 224 (3d Cir. 2000) ..................................................................................11

*In re Sagewood Manor Assocs. Ltd. P'ship,*
    223 B.R. 756 (Bankr. D. Nev. 1998) ......................................................................17

*In re Texaco,*
    85 B.R. 934 (Bankr. S.D.N.Y. 1988) ......................................................................12

*In re Tue N. Hoang and Vinh N. Hoang,*
    Case No. 8:13-BK-17929-SC pending.......................................................................4

*In re Valley View Shopping Ctr., L.P.,*
    260 B.R. 10 (Bankr. D. Kan. 2001) ........................................................................12

*In re Victory Constr. Co.,*
    42 B.R. 145 (Bankr. C.D. Cal. 1984)......................................................................13

*In re Wolf Creek Valley Metropolitan District No. IV,*
    138 B.R. 610 (Bankr. D. Colo. 1992) .....................................................................11

*In re Zante, Inc.,*
    467 B.R. 216 (D. Nev. 2012) ...................................................................................6

# TABLE OF AUTHORITIES
(continued)

Page(s)

**Statutes**

11 U.S.C. § 507(a)(1) ........................................................................................................18

11 U.S.C. § 1123(a)(1)-(4) ...................................................................................................8

11 U.S.C. § 1123(a)(5) .........................................................................................................8

11 U.S.C. § 1123(a)(6) .........................................................................................................9

11 U.S.C. § 1123(a)(7) .........................................................................................................9

11 U.S.C. § 1123(b) ...........................................................................................................10

11 U.S.C. § 1123(b)(2) .......................................................................................................10

11 U.S.C. § 1129(a)(1) .........................................................................................................5

11 U.S.C. § 1129(a)(2) .......................................................................................................10

11 U.S.C. § 1129(a)(5)(A) ..................................................................................................12

11 U.S.C. § 1129(a)(5)(B) ..................................................................................................12

11 U.S.C. § 1129(a)(8) .......................................................................................................14

11 U.S.C. § 1129(a)(11) .....................................................................................................17

11 U.S.C. § 1129(a)(12) .....................................................................................................18

**Other Authorities**

5 *Collier on Bankruptcy* ¶ 1122.03[3] (16th ed. 2012) .......................................................6

Gibson, Dunn &
Crutcher LLP

Plan Proponents Nguoi Viet Daily News, Inc. and Dat Huy Phan (collectively the "**Plan Proponents**" or "**NV Creditors**") hereby submit this memorandum of law (the "**Memorandum**") in support of confirmation of the *NV Creditors' Chapter 11 Plan of Reorganization for Little Saigon News, Inc., Dated September 29, 2015* [Docket No. 141] (the "**Plan**").[1]

## I.
## INTRODUCTION – THIS MEMORANDUM ADDRESSES THE ELEMENTS OF SECTION 1129(a)

This Memorandum demonstrate that the Plan satisfies all applicable requirements of Section 1129(a) of the Bankruptcy Code (with the exception of Section 1129(a)(8)) to which there should be no material dispute.  The focus of any real dispute as to the confirmation of the Plan concern "cram down" issues under Section 1129(b) and the treatment of the Claim and Interest of Huynh and the Claim of Le in Classes 4 and 5 of the Plan.  In the interest of compartmentalizing issues, the "cram down" issues under Section 1129(b) are addressed in the separate and concurrently filed *"Memorandum Of Law In Support Of Confirmation Of The NV Creditors' Chapter 11 Plan Of Reorganization For Debtor Little Saigon News Dated September 29, 2015, Pursuant to the "Cram Down" Provisions of Section 1129(b)"* (*"**Memorandum Supporting Cram Down**"*).

## II.
## PERTINENT PROCEDURAL HISTORY

On April 13, 2015, the Debtor and Huynh each filed a voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtor's Chapter 11 Case is being jointly administered with Huynh's chapter 11 case; however, Huynh's Estate has not been "substantively consolidated" with the Debtor's Estate and the Plan pertains only to the Debtor's Chapter 11 Case.[2]  Except as expressly provided in the Plan, the assets and liabilities of Huynh's estate are not affected by the Plan.

_____

[1]    Capitalized terms not otherwise defined herein shall have the meanings set forth in the Definitions set forth in Exhibit A to Plan.

[2]    On June 18, 2015, Brigitte Huynh's individual bankruptcy and case was administratively consolidated with the Little Saigon News, Inc., bankruptcy case and all filings thereafter in either case were made in the Little Saigon News case.  Therefore, all references to the docket refer to the docket in the Little Saigon News, Inc. case *unless* the reference is made specifically to the **"Huynh Dkt."**

The Debtor's exclusive right to file a plan expired on August 11, 2015. Therefore, the NV Creditors filed their proposed Plan and Disclosure Statement and On December 18, 2015, this Court entered (1) an Order Approving the Plan Proponents' First Amended Disclosure Statement; (II) Approving Solicitation, Notice and Tabulation Procedures; (III) Approving Form of Ballot and Voting Deadline; and (IV) Setting Confirmation Hearing and Deadline to File Objections (the "***Disclosure Statement***") [Dtk. No. 198] and found that the Disclosure Statement contained "adequate information," as that phrase is used in Bankruptcy Code Section 1125. On December 21, 2015, the Plan Proponents served the "Solicitation Packages" (*i.e.*, the Disclosure Statement, the Plan, the respective ballots, and a notice of the hearing on confirmation of the Plan and the deadlines and procedures for voting on or objecting to confirmation of the Plan (the "***Confirmation Notice***")) on creditors entitled to vote on the Plan [Dkt. No. 203]. The Plan Proponents also served the Disclosure Statement and Confirmation Notice on persons or entities that had either (i) requested notice or are entitled to notice by statute, or (ii) that have Claims or Interests against or in the Debtors, but are not entitled to vote on the Plan [Dkt. No. 204].

As set forth in the Scheduling Order, parties entitled to vote on the Plan were required to submit their Ballot by no later than January 8, 2016. All Ballots received have been tabulated by Douglas Levin, the "Ballot Tabulator," and a Ballot Summary describing voting results is being filed concurrently herewith. *See* Decl. of D. Levin re Ballot Summary ("***Ballot Summary***"). Class 3, which was the only class entitled to vote, voted to accept the Plan.

**III.**
**PERTINENT BACKGROUND FACTS**

**A.      Description of the Debtor and Insiders Brigitte Huynh and Joseph Le**

According to the Schedules and other documents filed by the Debtor, the Debtor publishes a weekly newspaper targeting the Vietnamese community and the Debtor claims that it has one of the largest circulations among Vietnamese language newspapers in the country. The Debtor operates out of its headquarters in Garden Grove, California and distributes its newspaper in approximately 17 different states.

Gibson, Dunn &
Crutcher LLP

2

Brigitte Huynh is the Debtor's CEO, President, Editor in Chief, sole shareholder and main contributor to the Debtor's publication.  Joseph Le is Huynh's son.  Huynh and Mr. Le are Insiders of the Debtor as defined by Section 101(31)(B) of the Bankruptcy Code.  Huynh is also a debtor in her own pending individual chapter 11 case which is jointly administered with the Debtor's Chapter 11 Case.  However, the Plan pertains only to the Debtor's Chapter 11 Case and the Debtor's Estate.

Although the Amended Schedules of the Debtor filed on August 3, 2015 listed a claim for $836,546.87, for "Loans/Capital Contributions," Huynh in her individual capacity has never asserted *any* claim against the Debtor and has never asserted in her initial Schedules and SOFA or any amended Schedules and SOFA that she holds *any* claim against the Debtor.  *See* Huynh's Schedule B; items 16, 18, 21, 35 all checked "NONE" [Huynh Dkt. No 20.]

Fifty-nine days after the October 2, 2015, Claims Bar Date and 2 days before the hearing on the approval of the Disclosure Statement, on November, 30 2015, Le filed an untimely proof of claim asserting an unsecured claim against the Debtor for $957,816.87 for unpaid loans allegedly made to the Debtor.  Le asserted that his untimely proof of claim for $957,816.87 was actually an amendment to an informal proof of claim in the approximate amount of $348,000.

All disputes as to confirmation of the Plan relate to the allowance and treatment of the Huynh and Le Claims.

**B.    Description of Plan Proponents – the NV Creditors**

Plan Proponents the NV Creditors consist of Nguoi Viet Daily News, Inc. and Dat Huy Phan who, along with Vinh Hoang, are Judgment Creditors as to a Judgment Claim against both the Debtor and Huynh as described below.  Nguoi Viet Daily News operates a daily rather than a weekly newspaper that also serves the Vietnamese community in the United States.  The Debtor has described Nguoi Viet Daily News as the Debtor's main competitor.

Dat Huy Phan is the CEO of Nguoi Viet Daily News, and Vinh Hoang is an employee of Nguoi Viet Daily News.

**C.    The Judgment Against the Debtor and in Favor of the Judgment Creditors**

On or about July 28, 2012, the Debtor and Huynh published an article entitled "*Secrets of Nguoi Viet Daily News: Who Is Really the Owner of NV Daily News?*"  Writing under the pen name

1  "Dao Nuong," Huynh praised herself as one of the best and most respected publishers in Orange

2  County and then asserted that Nguoi Viet Daily News, Dat Huy Phan and Vinh Hoang were

3  unqualified, incompetent, and unethical, and that Dat Huy Phan was a communist agent operating

4  Nguoi Viet Daily News on behalf of the communist government of Vietnam.

5    Despite the demand for a retraction by the Judgment Creditors, the Debtor and Huynh refused

6  and instead republished the same information.  Therefore, on September 4, 2012, the Judgment

7  Creditors commenced a defamation action in the Orange County Superior Court against the Debtor

8  and Huynh.  Following a four (4) week trial, the jury rendered a unanimous verdict against both

9  Huynh and the Debtor and found that the Judgment Creditors had proven by clear and convincing

10  evidence that the Debtor and Huynh (1) knew the statement was false or had serious doubts about the

11  truth of the statement and (2) in publishing the statement, acted with malice, oppression or fraud.

12  The jury awarded compensatory and punitive damages against both the Debtor and Huynh of $2.5

13  million in favor of Nguoi Viet Daily News, $700,000 in favor of Dat Huy Phan and $1.3 million in

14  favor of Vinh Hoang.  Vinh Hoang's Claim is controlled and being administered by Weneta Kosmala

15  as the Chapter 7 Trustee of the estate of Hoang and her husband in the case entitled *In re Tue N.*

16  *Hoang and Vinh N. Hoang*, Case No. 8:13-BK-17929-SC pending in the United States Bankruptcy

17  Court for the Central District of California in Santa Ana, California.

18    On April 6, 2015, the Orange County Superior Court entered a *Turnover Order in Aid of*

19  *Execution* against Huynh and the Debtor which ordered that the Debtor and Huynh turn over to the

20  Judgment Creditors all or substantially all of their assets.

21    Huynh and the Debtor filed Notices of Appeal as to the Judgment on April 9, 2015, but did

22  not post a bond to stay the execution of the Judgment Claim pending the outcome of the appeal.  The

23  appeal is pending before the California Court of Appeal, Fourth District, Division Three, Case

24  No. G051748.  An Order Granting Relief from Stay to allow the appeal to proceed was entered on

25  September 15, 2015; however, the Debtor has taken no action to prosecute the appeal.

26  **D. Overview of the Plan**

27    The Plan proposed by the NV Creditors pertains only to the Estate of Debtor Little Saigon

28  News and not to the bankruptcy case filed by Huynh or her estate.  With the exception of the Claims

Gibson, Dunn &
Crutcher LLP

4

of the NV Creditors, the Vinh Hoang Claim, any Claim or Interest of Huynh and any Subordinated

Claims, the Plan contemplates the payment in full of all Allowed Unclassified Claims, any Allowed

Non-Tax Priority Claim and all Allowed General Unsecured Claims.  The Plan also provides for the

cancellation of existing Equity Interests in the Debtor and the reissuance of 100% of the Equity

Interests in the Reorganized Debtor to the Judgment Creditors in exchange for a waiver of a portion

of their Judgment Claims and the NV Creditors' Funding Commitment.

**E.      The Plan's Voting Results**

As the Ballot Summary demonstrates, the Plan has been approved by Holders of Claims in

Class 3.  Holders of Claims in Classes 1 and 2 are deemed to accept the Plan and Holders of Claims

in Class 4 and Interests in Class 5 are deemed to have rejected the Plan.  As discussed in further detail

below and the Memorandum Supporting Cram Down, the Plan should be confirmed because (a) the

Plan satisfies all requirements under Bankruptcy Code Section 1129(a), other than 1129(a)(8) as to

the Classes deemed to have rejected the Plan, and (b) as to the deemed rejecting Classes, the Plan

satisfies the requirements of Bankruptcy Code Section 1129(b).

**IV.**
**THE PLAN SATISFIES ALL REQUIREMENTS OF BANKRUPTCY CODE
SECTION 1129(A), OTHER THAN 1129(A)(8) AS TO CLASSES TO DEEMED TO
REJECT THE PLAN**

There is no material dispute as to the Plan's compliance with Section 1129(a), with the

exception of Section 1129(a)(8).  Disputes as to confirmation of the Plan will focus on the "cram

down" elements of Section 1129(b) and the treatment of Claims and of Huynh and the belated Claim

of Le in Class 4 and Class 5 which are addressed in the Memorandum Supporting Cram Down.

**A.      Section 1129(a)(1): The Plan Complies With All Applicable Provisions Of The
Bankruptcy Code**

Bankruptcy Code Section 1129(a)(1) requires that a plan "compl[y] with the applicable

provisions of [the Bankruptcy Code]."  11 U.S.C. § 1129(a)(1).  Although broadly drafted, courts

have held that Section 1129(a)(1) requires that a plan comply with Bankruptcy Code Sections 1122

and 1123, which govern classification and the contents of the plan.  *See, e.g.*, *Kane v. Johns-Manville
Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648–49 (2d Cir. 1988); *see also In re Genesis*

1    *Health Ventures, Inc.*, 266 B.R. 591, 599 (Bankr. D. Del. 2001); *In re Greate Bay Hotel & Casino,*

2    *Inc.*, 251 B.R. 213, 223 (Bankr. D. N.J. 2000).

3        **1.        Section 1122:  Classification of Claims and Interests**

4        Bankruptcy Code Section 1122(a) provides that "a plan may place a claim or interest in a

5    particular class only if such claim or interest is substantially similar to the other claims or interests of

6    such class."  11 U.S.C. § 1122(a).  "Substantially similar" generally has been interpreted to mean

7    similar in legal character to other claims against a debtor's assets or to other interests in the debtor.

8    *See* 5 *Collier on Bankruptcy* ¶ 1122.03[3] (16th ed. 2012); *In re Loop 76, LLC*, 465 B.R. 525, 536

9    (B.A.P. 9th Cir. 2012) ("The Ninth Circuit has determined that the bankruptcy judge 'must evaluate

10   the nature of the claim, *i.e.*, the kind, species, or character of each category of claims.'") (quoting

11   *Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994)).  "A plan proponent is

12   afforded significant flexibility in classifying claims under § 1122(a) if there is a reasonable basis for

13   the classification scheme and if all claims within a particular class are substantially similar."  *In re*

14   *Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992).  The court is also

15   afforded broad discretion in approving a plan proponent's classification structure and should consider

16   the specific facts of each case when making such a determination.  *See, e.g.*, *In re Jersey City Med.*

17   *Ctr.*, 817 F.2d 1055, 1060-61 (3d Cir. 1987) (observing that "Congress intended to afford bankruptcy

18   judges broad discretion [under Section 1122] to decide the propriety of plans in light of the facts of

19   each case").

20       By its express language, Section 1122(a) addresses when claims "may" be placed together in

21   a particular class and Section 1122 does not prohibit separate classification of substantially similar

22   claims.  The Ninth Circuit has held that substantially similar claims may be separately classified

23   where it is based on a rational purpose and not, for example, solely to "gerrymander" an affirmative

24   vote.  *In re Barakat*, 99 F.3d 1520 (9th Cir. 1996); *see also In re Zante, Inc.,* 467 B.R. 216, 219 (D.

25   Nev. 2012) ("Section 1122(a) does not prohibit putting substantially similar claims into different

26   classes, but § 1129(b)(1) requires a rational reason for doing it.").

27       Courts have recognized that substantial differences in the amount and nature of claims may

28   warrant – and indeed, may require – their separate classification.  For example, in *In re EBP, Inc.*,

172 B.R. 241 (Bankr. N.D. Ohio 1994), the bankruptcy court approved a plan's separate

classification of trade creditors and a large judgement creditor under Section 1122(a) even though

both classes consisted of unsecured claims:

> In the present case, undisputedly, the Czubaj claim is a tort judgment claim while the
> balance of the Debtor's unsecured claims represent trade debt of claimants who
> continue to extend credit to the Debtor to sustain its business.  Other than being
> unsecured, the similarity between the Czubaj claim and the remaining unsecured
> claimants stops there.  The Czubaj judgment is a non-recurring judicial event,
> providing no continuing benefit to the Debtor's estate, whereas the trade creditors,
> while also unsecured, do provide a potential continuing benefit which will sustain the
> Debtor's business if confirmation is achieved.  The converse is true from the Debtor's
> position.  Also of significant note is the fact that the Czubaj claim is the single largest
> unsecured claim, representing approximately 70% of all the unsecured debt.  This
> comparison provides the requisite dissimilarity to warrant a separate classification of
> the aforesaid claimants pursuant to § 1122(a) of the Code.

*Id.* at 244.

As in *EBP*, there are obvious and meaningful differences between the Claims in Classes 2 and

3 as compared to the Claims of Huynh and Le.  Class 2 consists of approximately $310,000 in Claims

held by non-insider trade creditors who continue to do business with LSN post-petition and were not

"fortunate" enough to be improperly paid in full post-petition, as Huynh did with certain trade

creditors.  Class 3 consists of approximately $4.6 million in compensatory and punitive damages

arising from the Judgment against Huynh and LSN in favor of the Judgment Creditors that *would not

have existed but for* Huynh's actions in authoring articles she knew were defamatory and then using

the Debtor as the instrumentality to publish those articles which a jury found to have been taken with

"malice, oppression or fraud" and which gave rise to the claims of the NV Creditors.  As Huynh and

the Debtor have readily admitted, there would have been no Chapter 11 filing but for the claims

arising from the conduct of Huynh that resulted in the Judgment Claims.

Although Section 1122 addresses the grouping of claims in classes based on the attributes of

the claims and circumstances of the Chapter 11 case, Section 1122 does not address the treatment of

those claims and which is addressed in Section 1129.  Hence, objections to the classification of

claims based on the treatment of those claims in the Plan is really a "cram down" issue addressed

under Section 1129(b)(1).

Gibson, Dunn &
Crutcher LLP

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.    Section 1123:  Contents of the Plan

Bankruptcy Code Section 1123(a) sets forth certain mandatory requirements for a chapter 11 plan.[3]  *See* 11 U.S.C. § 1123(a).  As demonstrated below, the Plan fully complies with each of the mandatory requirements stated in Section 1123(a).

### a.    Section 1123(a)(1)-(4)

As required by Sections 1123(a)(1) through (a)(4), Article III of the Plan (1) designates those Classes of Claims and Interests required to be classified by the Bankruptcy Code, (2) specifies any Class of Claims or Interests that is not impaired under the Plan, (3) specifies the treatment of impaired Classes, and (4) provides the same treatment for each Claim or Interest within a particular Class, "unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  *See* 11 U.S.C. § 1123(a)(1)-(4).

### b.    Section 1123(a)(5)

Bankruptcy Code Section 1123(a)(5) requires that a plan "provide adequate means for the plan's implementation."  11 U.S.C. § 1123(a)(5); *Florida Partners Corp. v. Southeast Co. (In re Southeast Co.),* 868 F.2d 335, 338 (9th Cir. 1988).  The means for execution and implementation of the Plan are set forth in Article VII of the Plan.  In summary, the Plan provides for:  The payments of all Unclassified Claims, Allowed Priority Tax Claims, Allowed Non-Tax Priority Claims in Class 1 and Allowed Unsecured Claims in Class 2 in full on the Effective Date or when such Claims become an Allowed Claim.   The payment of claims will be funded from: (1) the operations and Assets of the Debtor before the Effective Date; (2) the operations and Assets and available Cash of the Reorganized Debtor after the Effective Date; and (3) if after the Effective Date the available Cash of the Reorganized Debtor is insufficient to pay any Allowed Claim when due as provided in the Plan, the NV Creditors' Funding Commitment.

---

[3]    Section 1123(a)(8) is applicable only to individual debtors and, therefore, is not discussed here. Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits continue to be paid post-confirmation at any levels established in accordance with Section 1114 of the Bankruptcy Code.  The Debtor has no obligation to pay retiree benefits and the Plan does not improperly alter any retiree benefits after the Effective Date of the Plan.

### c.    Section 1123(a)(6)

Bankruptcy Code Section 1123(a)(6) requires that a plan for a corporate debtor provide for the inclusion in the debtor's charter of "a provision prohibiting the issuance of non-voting equity securities" and, "as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes." 11 U.S.C. § 1123(a)(6).  The Plan provides that all Interests in the Debtor will be cancelled and 100% of the Equity Interests of the Reorganized Debtor will be reissued to the Judgment Creditors.  Allowed Claims will be paid in full notwithstanding the future operations of the Reorganized Debtor or the manner in which it is governed.  Therefore, the treatment of creditors will not be impacted by any issuance of non-voting securities.  However, the Judgment creditors have intent to issue non-voting securities in the Reorganized Debtor and, if necessary, are willing to agree that the Order confirming the Plan provide that the applicable governing documents of the Reorganized Debtor be amended to prohibit the issuance of non-voting equity securities.

### d.    Section 1123(a)(7)

Bankruptcy Code Section 1123(a)(7) provides that a plan must "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." 11 U.S.C. § 1123(a)(7).  Allowed Unclassified Claims, Allowed Priority Claims and Allowed Unsecured Claims will be paid in full notwithstanding the future operations of the Reorganized Debtor.  Claims in Class 4 and Interests in Class 5 will receive no distribution under the Plan.  Therefore, the performance of the terms of the Plan is not dependent on the Reorganized Debtor's post-Confirmation governance, creditors have no "interest" in those elected to manage the Reorganized Debtor, and creditors will be unaffected by the future election of directors of the Reorganized Debtor.

One-hundred percent of the equity of the Reorganized Debtor will be issued to the Judgment Creditors in exchange for a partial waiver of their Judgment Claim and the NV Creditors' Funding Commitment.  The Judgment Creditors are all affiliated with NVDN and are all very familiar with the operation of a Vietnamese Newspaper.  As provided in the Disclosure Statement and in Exhibit C to

Gibson, Dunn &
Crutcher LLP

1  the Plan, upon the Effective Date of the Plan, Dat Huy Phan, Long Tran and Bao Pham will become

2  the directors of the Reorganized Debtor, with Dat Huy Phan serving as CEO and president and Long

3  Tran serving as CFO and secretary of the Reorganized Debtor.  Dat Huy Phan is a Plan Proponent

4  and a Judgment Creditor, and his affiliation with Plan Proponent Nguoi Viet Daily News, Inc. is fully

5  disclosed in the Disclosure Statement.  *See, e.g.,* Discl. Statement at pp. 5-6.  Long Tran is the CFO

6  of Nguoi Viet Daily News, Inc. and Bao Pham is a member of the board of directors of Nguoi Viet

7  Daily News, Inc.

8          **e.**        **Section 1123(b)**

9  In addition to the mandatory plan provisions set forth in Bankruptcy Code Section 1123(a)

10  discussed above, Bankruptcy Code Section 1123(b) lists certain permissive provisions that may be

11  incorporated into a chapter 11 plan.  *See* 11 U.S.C. § 1123(b).  For example, Bankruptcy Code

12  Section 1123(b)(2) provides that a plan may, subject to Bankruptcy Code Section 365, "provide for

13  the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor

14  not previously rejected under such section. . . ."  11 U.S.C. § 1123(b)(2).

15  The Debtor's lease of its Seaboard location was deemed rejected by operation of Section

16  365(d)(4) on August 11, 2015.  Pursuant to Article IX of the Plan, any Executory Contract and

17  Unexpired Lease that is not the subject of a motion to assume filed on or prior to the Executory

18  Contract Rejection Date (which is forty-five (45) days after the Effective Date) shall be deemed to be

19  automatically rejected under the Plan without the need for an order of the Court.

20  Section 1123(b)(3) provides the Plan may settle or adjust any claim held by the Debtor and

21  retain claims to be prosecuted by the Reorganized Debtor.  Pursuant to Article VII.N of the Plan,

22  claims belonging to the estate to be prosecuted by the Reorganized Debtor and the Reorganized

23  Debtor, in its sole discretion, may settle, dismiss, or prosecute any pending litigation matter involving

24  a claim held by the estate.

25  **B.**      **Section 1129(a)(2):  The Debtors Have Complied with the Provisions of the Bankruptcy
26          Code**

27  Bankruptcy Code Section 1129(a)(2) requires that the Debtor "compl[y] with the applicable

28  provisions of [the Bankruptcy Code]."  11 U.S.C. § 1129(a)(2).  Section 1129(a)(2) focuses on

whether the Plan Proponents have complied with the disclosure and solicitation requirements under Bankruptcy Code Section 1125. *See, e.g., In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

Pursuant to the Disclosure Statement Approval Order, this Court approved the Disclosure Statement as containing "adequate information" within the meaning of Bankruptcy Code Section 1125 and approved its use in connection with the solicitation of votes to accept or reject the Plan. The Court also approved the proposed solicitation procedures with respect to the Plan. In accordance with the Disclosure Statement Approval Order, each Holder of a Claim entitled to vote on the Plan was sent the Solicitation Package which included the Disclosure Statement and the Plan. Holders of Claims or Interests in Classes deemed to reject the Plan were sent the Information Package containing the same material as the Solicitation Package, but without ballots.

## C.    Section 1129(a)(3): The Plan Has Been Proposed In Good Faith And Not By Any Means Forbidden By Law

Although the Bankruptcy Code does not define the term good faith, the Ninth Circuit has held that "a plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code." *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza L.P.)*, 314 F.3d 1070, 1076 (9th Cir. 2002); *see also In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001) (good faith is generally interpreted to mean that there exists a reasonable likelihood that a plan will achieve a result consistent with the "objectives and purposes of the Bankruptcy Code."). In addition, the "good faith" standard "requires a full disclosure of all material facts." *In re Wolf Creek Valley Metropolitan District No. IV*, 138 B.R. 610, 618 (Bankr. D. Colo. 1992). "In evaluating the totality of circumstances surrounding a plan a court has 'considerable discretion in finding good faith, with the most important feature being an inquiry into the fundamental fairness of the plan.'" *In re Coram Healthcare Corp.*, 271 B.R. at 234 (quoting *In re Am. Family Enters.*, 256 B.R. 377, 401 (D.N.J. 2000)).

The "good faith" standard is satisfied here. After the expiration of the Exclusivity Period under Section 1121, the NV Creditors proposed the Plan with the legitimate purpose of providing for the timely, efficient, and fair satisfaction of legitimate Allowed Claims against the Debtor, with

funding as needed to be provided through the NV Creditors' Funding Commitment.  The Plan

provides for the payment of Allowed Unclassified, Priority and General Unsecured Claims (Class 2)

in full, which is far better than those creditors would receive in a Chapter 7 liquidation.  Furthermore,

all material facts relating to the Plan have been fully and very extensively disclosed in the Disclosure

Statement, and added additional material as required by the Court.

## D.    Section 1129(a)(4): Compensation of Professionals Will Remain Subject to Court Approval

Section 1129(a)(4) has been construed to require that all professional fees to be paid from

estate assets be subject to review and approval as to their reasonableness by the bankruptcy court.

*See, e.g.*, *In re Valley View Shopping Ctr., L.P.*, 260 B.R. 10, 22–23 (Bankr. D. Kan. 2001); *In re*

*Texaco*, 85 B.R. 934, 939 (Bankr. S.D.N.Y. 1988).  Article II.B of the Plan expressly provides that

"[n]o Professional Fee Claim shall be an Allowed Professional Fee Claim until approved by a Final

Order of the Bankruptcy Court pursuant to a timely Filed Final Fee Application."  Therefore, any

Professional Fee Claims will only become an Allowed Claim after review and approval by this Court

pursuant to Bankruptcy Code Section 330, and only Allowed Professional Fee Claims will be paid.

*See In re Elsinore Shore Assocs.*, 91 B.R. 238, 268 (Bankr. D. N.J. 1988) (requirements of

Section 1129(a)(4) satisfied where plan provides for payment of only "allowed" administrative

expenses).

## E.    Section 1129(a)(5):  The Debtors Have Disclosed All Necessary Information Regarding Directors, Officers, and Insiders

Bankruptcy Code Section 1129(a)(5)(A) requires that (i) the plan proponent disclose "the

identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a

director, officer, or voting trustee of the debtor . . . or a successor to the Debtor under the plan," and

(ii) the appointment to, or continuance of a director, officer, or voting trustee be "consistent with the

interests of creditors and equity security holders and with public policy."  11 U.S.C. § 1129(a)(5)(A).

Bankruptcy Code Section 1129(a)(5)(B) further provides that the plan proponent must disclose "the

identity of any insider that will be employed or retained by the reorganized debtor, and the nature of

any compensation for such insider."  11 U.S.C. § 1129(a)(5)(B).

Gibson, Dunn &
Crutcher LLP

12

As provided in the Disclosure Statement and in Exhibit C to the Plan, upon the Effective Date of the Plan, Dat Huy Phan, Long Tran and Bao Pham will become the directors of the Reorganized Debtor, with Dat Huy Phan serving as CEO and president and Long Tran serving as CFO and secretary of the Reorganized Debtor.  Dat Huy Phan is a Plan Proponent and a Judgment Creditor, and his affiliation with Plan Proponent Nguoi Viet Daily News, Inc. is fully disclosed in the Disclosure Statement.  *See, e.g.,* Discl. Statement at pp. 5-6.  Long Tran is the CFO of Nguoi Viet Daily News, Inc. and Bao Pham is a member of the board of directors of Nguoi Viet Daily News, Inc.

No insider of the Debtor will be employed or retained by the Reorganized Debtor.

## F.     Section 1129(a)(7): The Plan Is In The Best Interests Of All Creditors And Interest Holders In The Debtors

Bankruptcy Code Section 1129(a)(7) imposes a "best interests test" that requires that each Holder of a Claim or Interest in an Impaired Class must either (1) vote to accept the Plan or (2) receive or retain under the Plan Cash or property of a value, as of the Effective Date of the Plan, that is not less than the value such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  11 U.S.C. § 1129(a)(7); *see also In re Victory Constr. Co.*, 42 B.R. 145, 151 (Bankr. C.D. Cal. 1984); *In re Consol. Water Utilities, Inc.*, 217 B.R. 588, 592 (B.A.P. 9th Cir. 1998).  The "best interests" test focuses on individual dissenting creditors, rather than on classes of claims or interests, and requires that impaired, dissenting creditors or interest holders receive or retain value under the plan that is not less than the amount they would receive if the debtor were liquidated.  *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 442 & n.13 (1999); *see also In re Pikes Peak Water Co.*, 779 F.2d 1456, 1460 (10th Cir. 1985). The Plan complies with the best interests test set forth in Section 1129(a)(7).

To determine if the Plan satisfies the "best interests" test as to Holders of Claims or Equity Interests who do not vote to accept the Plan or who are presumed to reject the Plan, using a hypothetical liquidation analysis, the Bankruptcy Court will compare (1) the present value of the aggregate dollar amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation proceeding that is available to be distributed to Holders of Claims and Equity Interests with (2) the value of the property offered to Creditors under the Plan.

Based on financial information filed by the Debtor in its Schedules, SOFA and Monthly Operating Reports and proofs of Claim filed as of the Bar Date of October 2, 2015, the NV Creditors created a hypothetical Liquidation Analysis, a copy of which was attached to the Disclosure Statement as **Exhibit 4**. The Liquidation Analysis considers (1) the erosion in value of the Debtor's limited assets in a chapter 7 case in the context of the expeditious liquidation of assets, (2) the increased costs and expenses of liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy which could be as much as three percent (3%) of all funds distributed to Creditors and the chapter 7 trustee, (3) the additional legal fees and other fees necessary to liquidate the Debtor's Assets, to resolve Claim disputes, to prosecute Avoidance Actions and other costs of administration and the liquidation, (4) the total amount of Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims would be paid in full before General Unsecured Claims, (5) that, in a liquidation, there would be no NV Creditors' Funding Commitment to provide the funds necessary to pay Allowed Claims, (6) the Judgment Claim of the Judgment Creditors exceeding $4.5 million would not be reduced as it is under the Plan and would be paid (or reserved) pro rata with other General Unsecured Claims from the proceeds of the liquidation of the Debtor's Estate Assets alone, (7) Creditors who received Avoidable Payments would also be subject to Avoidance Actions to recover amounts paid to them both Pre-Petition and Post-Petition and their resulting Claims would further increase the amount of total General Unsecured Claims entitled to a distribution by the chapter 7 trustee. Based on the foregoing, the NV Creditors project that Holders of Allowed General Unsecured Claims would receive little to no distribution in a chapter 7 liquidation. *See also* Decl. of Long Tran.

The Plan thus provides a recovery to Holders of Allowed Claims in Classes 1 & 2 that far exceeds the amount they would receive in a chapter 7 liquidation and, therefore, the Plan is in the best interests of Creditors.

**G.      Section 1129(a)(8): All Impaired Classes Either Voted To Accept The Plan Or The Debtors Will Meet The Requirements of Section 1129(b) with Respect to Such Classes**

Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept the plan or not be impaired under the plan. 11 U.S.C. § 1129(a)(8). Pursuant to Section

1126(c), a class of impaired claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of the claims in that class that actually vote, vote to accept the plan. A class that is not impaired under a plan, and each holder of a claim or interest in such class, is conclusively presumed to have accepted the plan. On the other hand, a class is deemed to have rejected the plan if the plan provides that the Holders of claims or interests in that class will not receive or retain any property under the plan on account of such claims or interests. If there are no creditors in a class created under a plan, Section 1129(a)(8) is satisfied with respect to that class. *See In re Provident Royalties, LLC*, No. 09-33886, 2010 Bankr. LEXIS 1947, at *48–49 (Bankr. N.D. Tex. June 10, 2010); *In re Mirant Corp.*, 03-46590, 2007 Bankr. LEXIS 4951, at *31 (Bankr. N.D. Tex. Apr. 27, 2007).

The Ballot Summary reflects that Class 3, which was the only class entitled to vote on the Plan, voted to accept the Plan.

| CLASS | STATUS OF ACCEPTANCE |
|---|---|
| Class 1 | Deemed to accept (Unimpaired) |
| Class 2 | Deemed to accept (Unimpaired) |
| Class 3 | 100% in number and amount |
| Class 4 | Deemed to reject |
| Class 5 | Deemed to reject |

No Holder of any Claim in Class 4 (Huynh Claim and Subordinated Claims) and no Holder of an equity Interest in Class 5 will receive any distribution under the Plan. Therefore, Classes 4 and 5 are deemed to have rejected the Plan under Bankruptcy Code Section 1126(g). Accordingly, the "cram down" provisions of Bankruptcy Code Section 1129(b)(1) are invoked with respect to those Classes that have been deemed to have rejected the Plan.

**H.    Section 1129(a)(9): The Plan Provides for the Payment in Full Of All Allowed Priority Claims**

Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under Section 507(a) receive specified cash payments under the plan. Unless the holder of a particular claim agrees to a different treatment with respect to such claim, Section 1129(a)(9) of the

Bankruptcy Code generally requires the plan to satisfy administrative and priority tax claims in full in cash.

As required by Section 1129(a)(9) of the Bankruptcy Code, Sections II.A & B of the Plan generally provide for full payment of Allowed Administrative Claims on the later of the Effective Date or the fifteenth (15th) Business Day after the date of an order by the Bankruptcy Court allowing such Administrative Claim.

Section II.C of the Plan generally provides that, except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date, as provided in Section 1129(a)(9)(C) of the Bankruptcy Code, a Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim, (a) regular installment Cash payments, occurring not less frequently than quarterly over a period not exceeding five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim, or (b) such other treatment as to which such Holder of a Priority Tax Claim and the Reorganized Debtor shall have agreed upon in writing; *provided, however*, that the Reorganized Debtor shall have the right to pay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty.

Section IV.A of the Plan generally provides for full payment of Allowed Priority Non-Tax Claims on the later of (i) the Effective Date, or (ii) the fifteenth (15th) Business Day after such Priority Non-Tax Claim becomes an Allowed Priority Tax Claim.

**I.      Section 1129(a)(10): At Least One Class Of Impaired Claims Has Accepted The Plan**

Section 1129(a)(10) provides that to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, excluding acceptance by any insider.  The Ballot Summary and the chart set forth above demonstrate that Class 3, which is impaired and the only class entitled to vote on the Plan, has voted to accept the Plan.

Gibson, Dunn &
Crutcher LLP

16

**J.    Section 1129(a)(11): The Plan Is Not Likely To Be Followed By Liquidation Or The Need For Further Financial Reorganization**

Bankruptcy Code Section 1129(a)(11) requires that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the debtor. . . ."  11 U.S.C. § 1129(a)(11).  This requirement is often referred to as the "feasibility" requirement, and is satisfied by a showing that the reorganized debtor has a "reasonable probability" of satisfying its obligations under a plan.  *See In re Acequia, Inc.,* 787 F.2d 1352, 1364 (9th Cir. 1986).  The Bankruptcy Appellate Panel for the Ninth Circuit summarized the feasibility requirement in *Computer Task Group, Inc. v. Brotby (In re Brotby),* 303 B.R. 177 (B.A.P. 9th Cir. 2003), as follows:

> To demonstrate that a plan is feasible, a debtor need only show a reasonable probability of success.  The Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy § 1129(a)(11), so long as adequate evidence supports a finding of feasibility. *(citations omitted)*

*Id.* at 191–92; *see also In re Melcher,* 329 B.R. 865, 878 (Bankr. N.D. Cal. 2005) (same).

Courts have unanimously held that a plan does not require a guarantee of success to meet the feasibility requirement.  *See, e.g., Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed.").  As a result, courts recognize that "[t]he mere potential failure of the plan or prospect of financial uncertainty is insufficient to disprove feasibility."  *In re Sagewood Manor Assocs. Ltd. P'ship*, 223 B.R. 756, 762–63 (Bankr. D. Nev. 1998); *see also In re Patrician St. Joseph Partners, Ltd.*, 169 B.R. 669, 674 (D. Ariz. 1994) (recognizing that "[t]he prospect of financial uncertainty does not defeat a plan since a guarantee of the future is not required.  The mere potential for failure of the plan is insufficient to disprove feasibility.") (internal citations omitted).  Thus, the mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds.  *See, e.g., F.H. Partners, L.P. v. Inv. Co. of the Southwest, Inc. (In re Inv. Co. of the Southwest, Inc.)*, 341 B.R. 298, 311 (B.A.P. 10th Cir. 2006) ("[T]he fact that unexpected events may defeat [cash] projections does not make a plan unfeasible as a matter of law or fact.") (internal quotations omitted).

Here, the Plan simply provides for the payment in full of Unclassified Claims, Priority Claims and Unsecured Claims, funded by cash on hand of the Reorganized Debtor and the NV Creditors'

Funding Commitment, to be paid on the later of 15 days after the Effective Date or when they become Allowed Claims.  At Section XI.A of the Disclosure Statement and in Exhibits 2 and 3 to the Disclosure Statement, the NV Creditors provided a projection of the maximum amount of Allowed Claims and evidence of an account holding sufficient sums to pay those Claims pursuant to the NV Creditors' Funding Commitment, even if the Reorganized Debtor has no available cash.  *See* Discl. Statement § XI.A, Exhs. 2-3. Future operations or even the future existence of the Reorganized Debtor will have no bearing on the performance of the Plan.

**K.     Section 1129(a)(12): All Statutory Fees Have Been Or Will Be Paid**

Section 1129(a)(12) requires the payment of "[a]ll fees payable under Section 1930 [of title 28 of the United States Code], as determined by the Court at the hearing on confirmation of the plan." 11 U.S.C. § 1129(a)(12).  Section 507(a)(1) of the Bankruptcy Code further provides that "any fees and charges assessed against the estate under [Section 1930,] chapter 123 of title 28" are afforded priority as administrative expenses.  11 U.S.C. § 507(a)(1).  In accordance with Sections 507 and 1129(a)(12) of the Bankruptcy Code, section XIV.D of the Plan provides that all fees due and payable to the Office of the United States Trustee pursuant to Section 1930 of title 28 of the United States Code shall be paid in full.

**V.**

**THE PLAN SATISFIES THE ELEMENTS OF "CRAM DOWN" UNDER SECTION 1129(B)**

The focus of any dispute as to the confirmation of the Plan concern "cram down" issues under Section 1129(b) and the treatment of the Claims and Interest of Huynh and the Claim of Le in Classes 4 and 5.  In the interest of compartmentalization, "cram down" issues under Section 1129(b) are addressed in the concurrently filed Memorandum Supporting Cram Down.

Gibson, Dunn &
Crutcher LLP

# VI.
## CONCLUSION

**WHEREFORE**, for the reasons set forth above and in the Memorandum Supporting Cram Down, the Debtors request that this Court enter an Order confirming the Plan and grant such other and further relief that this Court deems is necessary and appropriate.

Dated: January 8, 2016

HOYT E. HART II

CRAIG H. MILLET
DOUGLAS LEVIN
GIBSON, DUNN & CRUTCHER LLP

By:  /s/ Craig H. Millet
     Craig H. Millet

Attorneys for Plan Proponents the NV Creditors

102046849.1

Gibson, Dunn &
Crutcher LLP

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:**3161 Michelson Drive, Irvine, CA  92612-4412**

A true and correct copy of the foregoing document entitled (*specify*): _MEMORANDUM OF LAW IN SUPPORT OF "NV CREDITORS' CHAPTER 11 PLAN OF REORGANIZATION FOR DEBTOR LITTLE SAIGON NEWS DATED SEPTEMBER 29, 2015" PURSUANT TO SECTION 1129(a) will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 8, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses indicated below:

- Sandor T Boxer    tedb@tedboxer.com
- Nancy S Goldenberg    nancy.goldenberg@usdoj.gov
- Ann K Johnston    ajohnston@bergerkahn.com, mtom@bergerkahn.com,tsmith@bergerkahn.com
- Michael Jones    mike@mjthelawyer.com, michaeljonesmyecfmail@gmail.com
- Douglas G Levin    DLevin@gibsondunn.com
- Tuananh Mai    pmai@tt-lawfirm.com
- Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- John Na    jna@tt-lawfirm.com
- R G Pagter    gibson@ppilawyers.com, ecf@ppilawyers.com
- Leonard Pena    lpena@penalaw.com, penasomaecf@gmail.com
- Frederick S Reisz    reisz@mmrs-law.com, chun@mmrs-law.com,greene@mmrs-law.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- David R. Weinstein    dweinstein@weinsteinlawfirm.net

**2. SERVED BY UNITED STATES MAIL:**
On  January 8, 2016           I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | | |
|---|---|---|
| Hon. Mark S. Wallace<br>U.S. Bankruptcy Court<br>Ronald Reagan Federal Building<br>411 W. Fourth Street<br>Santa Ana, CA 92701 | Thomas Pastore<br>Sanli Pastore & Hill<br>1990 S. Bundy Dr., Ste 800<br>Los Angeles, CA 90025 | |

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  [Date]                , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 8, 2016 | Pam Crawford | /s/ Pam Crawford |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

102046849.1

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.