1  DAVID R. WEINSTEIN (SBN 082881)
   WEINSTEIN LAW FIRM
2  A Professional Corporation
   16501 Ventura Boulevard, Suite 400
3  Encino, CA 91436
   Telephone: (747) 233-3653
4  Facsimile:  (747) 233-3601
   dweinstein@weinsteinlawfirm.net
5
   Attorneys for Joseph Le and Stephen B. Holliday
6

7

8              UNITED STATES BANKRUPTCY COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                   SANTA ANA DIVISION

11  In re                          | Case No. 8:15-bk-11875-MW

12  THE LITTLE SAIGON NEWS         | Chapter 11
    INCORPORATED,
13                                 | JOINTLY ADMINISTERED WITH
                  Debtor.         | Case No. 8:15-bk-11876-MW
14

15  In re                          | JOSEPH LE AND STEPHEN B.
                                   | HOLLIDAY'S OBJECTION TO
16  BRIGITTE LAURE HUYNH,          | CONFIRMATION OF NV CREDITORS'
                                   | PLAN
17                  Debtor.
                                   | DATE:   February 3, 2015
18  [ X ] Affects ONLY Little Saigon News. | TIME:   10:30 a.m.
                                   | PLACE:  Courtroom 6C
19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

|  |  | **PAGE** |
|---|---|---|
| I. | INTRODUCTION.................................................................. | 2 |
|  | A. Summary of Objections to Confirmation.............................. | 3 |
|  | B. Mr. Le's Claim....................................................... | 3 |
| II. | THE PLAN IMPROPERLY CLASSIFIES AND UNFAIRLY DISCRIMINATES AGAINST MR. LE'S CLAIM................................ | 4 |
|  | A. Mr. Le Holds An Allowable, Unsecured Claim for $1,033,816.28........ | 5 |
|  | B. Mr. Le Holds a Class 2 Claim....................................... | 5 |
|  | C. Exclusion of Mr. Le's Claim From Class 2 Violates § 1122(a) and § 1129(b)(1)...................................................... | 6 |
|  |     1. Separate Classification of Similar Claims Raises an Inference of Impropriety. | 6 |
|  |     2. The NV Creditors Do Not Carry Their Burden of Justifying Separate Classification of Mr. Le's Claim................ | 7 |
|  | D. The Plan Discriminates Unfairly Against Mr. Le...................... | 8 |
|  |     1. The Plan Discriminates Among Unsecured Creditors............... | 9 |
|  |     2. Grossly Disparate Treatment is Unfair.......................... | 9 |
|  |     3. Insider Status Is Insufficient to Justify Discriminatory Treatment As a Matter of Law.................................... | 10 |
|  | E. Equitable Subordination............................................ | 11 |
|  |     1. Equitable Subordination: General Principles...................... | 11 |
|  |     2. The NV Creditors' Allegations................................ | 12 |
|  |     3. Insider Status Is An Insufficient Basis For Equitable Subordination As a Matter of Law............................... | 13 |
|  |     4. Even If All The NV Creditors' Allegations Were True, They Would Fail to Sustain Their Burdens of Proof – And Almost None Are True................................... | 13 |
|  | F. Recharacterization................................................. | 16 |
|  |     1. Recharacterization Requires Analysis of State Law................ | 16 |
|  |     2. The NV Creditors' Argument Contravenes *Fitness Holdings*...... | 17 |
| III. | OTHER PLAN DEFECTS................................................... | 18 |
|  | A. The Plan Is Not Feasible........................................... | 18 |
|  |     1. The Plan Does Not Adequately Account For Disputed Claims...................................................... | 18 |
|  |     2. The Plan Is Not Supported By Adequate Funding.................. | 19 |
|  | B. Other Defects...................................................... | 20 |
| IV. | THE PLAN IS NOT PROPOSED IN GOOD FAITH.............................. | 23 |
| V. | CONCLUSION.......................................................... | 25 |

1

# TABLE OF AUTHORITIES

2

## CASES

**PAGE**

3

*In re 11,111, Inc.,*
    117 B.R. 471 (Bankr. D. Minn. 1990)……………………………………..10, 11

4

*In re ARN Ltd. LP,*
    140 B.R. 5 (Bankr. D.D.C. 1992)………………………………………… 7, 10-11

5

*Barakat v. The Life Ins. Co. of Va.*
    *(In re Barakat),* 99 F.3d 1520 (9th Cir. 1996)………………………………… 5, 6

6

*Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.),*
    269 F.3d 726 (6th Cir. 2001)……………………………………………… 17

7

*Daewoo Motor America, Inc. v. Daewoo Motor Co., Ltd*
    *(In re Daewoo Motor America, Inc.),*
    554 Fed.Appx. 638 (9th Cir. 2014)………………………………………17

8

*CW Capital Asset Management, LLC v. Burcom Capital II, LLC,*
    2014 WL 2864678 (E.D.N.C. 2014)……………………………………7, 8, 10

9

*In re Deming Hospitality, LLC,*
    2013 WL 1397458 (Bankr. D.N.M. 2013)……………………………… 9

10

*In re Frascella Enterprises, Inc.,*
    360 B.R. 435 (Bankr. E.D. Pa. 2007)………………………………… 7, 8

11

*Hoppe v. Rittenhouse,*
    279 F.2d 3 (9th Cir. 1960)……………………………………………… 18

12

*In re Kansas City Journal-Post Co.,*
    144 F.2d 791 (8th Cir. 1944)…………………………………………… 10

13

*In re LeBlanc,*
    622 F.2d 872 (5th Cir. 1980)…………………………………………10-11

14

*Marlow Manor Downtown, LLC,*
    2015 WL 667543 (BAP 9th Cir. 2015)………………………………… 6

15

*Official Committee of Unsecured Creditors, etc. v. Hancock Park Capital II, L.P.*
    *(In re Fitness Holdings, Int'l, Inc.),* 714 F.3d 1141 (9th Cir. 2013)…………16, 17

16

*Olympia & York Fla. Equity Corp. v. The Bank of New York*
    *(In re Holywell Corp),* 913 F.2d 873 (11th Cir. 1990)……………… 5, 6, 7, 8, 10-11

17

*Oxford Life Ins. Co. v. Tucson Self-Storage, Inc.*
    *(In re Tucson Self-Storage, Inc.),* 166 B.R. 892 (BAP 9th Cir. 1994)……6-7, 8, 9, 11

18

*Paulman v. Gateway Venture Partners III, LP*
    *(In re Filtercorp, Inc.),* 163 F.3d 570 (9th Cir. 1998)……………………11, 15, 16

28

# **TABLE OF AUTHORITIES (Cont'd)**

## **CASES**                                                              **PAGE**

*Pizza of Hawaii, Inc. v. Shakey's*
   *(In re Pizza of Hawaii, Inc.),*
   761 F.2d 1374 (9th Cir. 1985)......................................................19, 20

*Reaves v. Comerica Bank-California*
   *(In re GTI Capital Holdings, LLC),*
   2007 WL 2493671 (Bankr. D. Ariz. 2007)..................................11, 12

*Rev. Op. Group v. ML Manager LLC (In re Mortgages Ltd.),*
   771 F.3d 623 (9th Cir. 2014)........................................................21

*In re Sentinel Management Group, Inc.,*
   398 B.R. 281 (Bankr. N.D. Ill. 2008)............................................ 8

*Sherman v. Harbin (In re Harbin),*
   486 F.3d 510 (9th Cir. 2007)..............................................5, 6, 19, 20

*Steelcase, Inc. v. Johnston (In re Johnston),*
   21 F.3d 323 (9th Cir. 1994)...........................................................7

*In re Sylmar Plaza, L.P.,*
   314 F.3d 1070 (9th Cir. 2002)......................................................23

*Trone v. Smith (In re Westgate-California Corp.),*
   642 F.2d 1174, 1178 (9th Cir. 1981)..................................10, 12, 13

*Wells Fargo Bank, N.A. v. Loop 76 LLC*
   *(In re Loop 76, LLC),* 465 B.R. 525 (BAP 9th Cir. 2012)...............................6

*Westgate-California Corp. v. First National Finance,*
   650 F.2d 1040 (9th Cir. 1981)....................................................11-12

*Wood v. Richmond (In re Branding Iron Steakhouse),*
   536 F.2d 299 (9th Cir. 1976)................................................ 13, 15, 16

## **STATUTES AND RULES**

11 U.S.C. § 1101(2)...............................................................20, 21
11 U.S.C. § 1101(2)(c)..............................................................21
11 U.S.C. § 1122.................................................................. 3, 6, 8
11 U.S.C. § 1127(b)..............................................................3, 6, 8
11 U.S.C. § 1129(a)................................................................21
11 U.S.C. § 1129(a)(1).............................................................3, 6
11 U.S.C. § 1129(a)(3)...........................................................3, 6, 7
11 U.S.C. § 1129(a)(5)..............................................................23
11 U.S.C. § 1129(a)(5)(i)...........................................................22
11 U.S.C. § 1129(a)(5)(ii)..........................................................22
11 U.S.C. § 1129(a)(11).............................................................18

Joseph Le and Stephen B. Holliday (sometimes collectively, "Objectors") oppose confirmation of the *NV Creditors' Chapter 11 Plan of Reorganization Dated September 29, 2015* ("Plan", Docket no. 141) filed by Nguoi Viet Daily News, Inc. ("Viet News") and Dat Huy Phan ("Phan" and together with Viet News, the "NV Creditors" or "Proponents"). This Opposition addresses and responds to the representations and arguments in the Proponents' *Memorandum of Law in Support of Confirmation. . .Pursuant to Section 1129(a)* ("General Memorandum", Docket no. 210) and their *Memorandum of Law in Support of Confirmation. . .Pursuant to the "Cram Down" Provisions of Section 1129(b)* ("Cramdown Memorandum", Docket no. 212). Objectors have separately filed evidentiary objections to the declaration of Long Tran offered by the Proponents.

## I.

## **INTRODUCTION**

The gravamen of the NV Creditors' Plan is retribution against Debtor Brigitte Huynh. To that end, the Plan provides for the NV Creditors to take over Debtor Little Saigon so they can shut it down, take advantage of the Debtors' business base for themselves, or both. Under the Plan, the NV Creditors appropriate to themselves not only control of Little Saigon's assets, but its appeal of the NV Creditors' judgment and even its attorney-client privileges. That harsh result is more suited to state court litigation than reorganization proceedings and should be subjected to appropriately harsh scrutiny. That is: the Plan evidences no bankruptcy purpose and is not designed to satisfy claims.[1] The Plan is a litigation maneuver, intended to put the Debtors out of business <u>and</u> end the state court litigation favorably to Proponents, without a legal challenge to the judgment or risk that the Debtors continue as competitors.

---

[1]    The proposed payments to administrative claimants and trade creditors are plainly a "cost of doing business", not a purpose of the Plan.

To end the litigation in this manner, and fulfill the dubious goal of retribution, the NV Creditors need to convince the Court to isolate and subjugate the insiders' unsecured claims (over $1,000,000 is owed to Mr. Le and over $800,000 is owed to Ms. Huynh).

## A.    **Summary of Objections to Confirmation.**

Objectors agree with the Proponents, that treatment of Mr. Le's and Ms. Huynh's claims is a pivotal issue, but it is not the only one. In this Objection, Objectors show that there are several other reasons to refuse confirmation too.

1.    The Plan violates § 1129(a)(1) (compliance with the Bankruptcy Code) because, without limitation, it contravenes § 1122 (classification).

2.    The Plan unfairly discriminates against Mr. Le whose claim is of the same legal character as creditors who will be paid 100%, while the Plan allocates zero payment to him.

3.    The Plan is not feasible because (a) it is not supported by proof of adequate funding and (b) it does properly account the Le and Huynh's (disputed) claims.

4.    The Plan fails to satisfy several other requirements of § 1129(a).

5.    The Plan is not supported by admissible evidence.

7.    The Plan is not prosecuted in good faith.

## B.    **Mr. Le's Claim.**

On January 9, 2016, Joseph Le filed his Second Amended Claim. The Second Amended Claim supplements and expands upon Mr. Le's First Amended Claim which was filed on November 30, 2015 (Claim no. 10). Both the First and Second Amended Claims amended informal proofs of claim that exist in Mr. Le's favor in the form of five documents and his active conduct, participation and visibility in this case (and the companion *Huynh* case).

/ / /

/ / /

On January 11, 2016, Mr. Le filed his *Motion For Order: (1) Deeming Proof of Claim Timely; and (2) Allowing Claim* ("Claim Motion", Docket no. 215). The Claim Motion provides extensive evidence (28 exhibits) and testimony from five declarants, analyzes the *Amendable Informal Claim Doctrine* as it is applied by the Ninth Circuit and concludes that Mr. Le is entitled to a timely, allowed unsecured claim for $1,033,816.28.

On January 15, 2016, Mr. Le filed his *Opposition to NV Creditors' Motion for Order Disallowing Claim No. 10* ("Claim Objection Opposition", Docket no. 219). The Claim Objection Opposition is supported by 30 exhibits and declarative testimony from six declarants (much, but not all of which, was also provided with the Claim Motion) and confirms Mr. Le's claim. To avoid further duplication, those recently filed exhibits and declarations are not reproduced here but Objectors respectfully ask that this Objection to Confirmation be read in conjunction with the Second Amended Claim, the Claim Motion and the Claim Objection Opposition. To the extent perceived necessary, Objectors request judicial notice of those earlier, related filings.

## II.

## THE PLAN IMPROPERLY CLASSIFIES AND UNFAIRLY DISCRIMINATES AGAINST MR. LE'S CLAIM

Joseph Le holds an allowable, general unsecured claim for $1,033,816.28. Absent equitable subordination of the claim, or recharacterization of the claim as equity, the Plan fails. Objectors respectfully reiterate that the NV Creditors will, under their own Plan, realize little, if any, liquid value toward their $4,500,000 claim while they spend several hundred thousand dollars more. That "end game" is, without doubt, a material distortion of the Chapter 11 process. A plan of that nature should be subjected to the sharpest scrutiny in every detail.

/ / /

**A.** **Mr. Le Holds An Allowable, Unsecured Claim for $1,033,816.28.**

Mr. Le's Second Amended Claim is supported by 28 exhibits. Mr. Le's Claim Motion and his Claim Objection Opposition overcome objections the NV Creditors have directed at the existence of Mr. Le's claim. Analysis of the Plan must account for his claim.[2]

**B.** **Mr. Le Holds a Class 2 Claim.**

In the Cramdown Memorandum, the NV Creditors justify separately classifying their claims from other unsecured claims in Class 2. Cramdown Memorandum, consec. pgs. 9-10. That, however, is a non-issue. The NV Creditors do not address at all the real issue, namely that Mr. Le's claim should be included in Class 2. Just as "trade creditors" provided Little Saigon with pre-petition, unsecured credit that supported the business operations, so did Mr. Le. Both were influenced by the drain imposed on Little Saigon by the NV Creditors' litigation and the fact that Mr. Le is an insider is insufficient, as a matter of law, to justify separate classification of his claim. This is particularly so when the separate classification is intended to gerrymander voting or facilitate unfair discrimination. *Olympia & York Fla. Equity Corp. v. The Bank of New York (In re Holywell Corp)*, 913 F.2d 873, 879-80 (11th Cir. 1990); *accord, Barakat v. The Life Ins. Co. of Va. (In re Barakat),* 99 F.3d 1520, 1525-26 (9th Cir. 1996) (approving *Holywell Corp.* and holding that there must be "legitimate business or economic justification" for separate classification of like claims). Rather obviously, if Mr. Le's claim was included in Class 2 as it should have been, the Proponents would not have had the silent, unimpaired class they need, they could not satisfy the Absolute Priority Rule and Class 3 would be unfairly favored.

/ / /

---

[2]    The Claim Objection and the Claim Motion are scheduled for hearing two days before the Plan comes before the Court. Consequently, any resolution of the claim will not be final, so the Plan must still account for the claim. *See Sherman v. Harbin (In re Harbin)*, 486 F.3d 510, 517 (9th Cir. 2007) (to be "feasible", a plan must actively account for potential claims). This issue is elaborated upon below, in section III.A.1.

5

### C. **Exclusion of Mr. Le's Claim From Class 2 Violates § 1122 (a) and § 1129(b)(1) Because the Classification Scheme Is Designed to Facilitate Unfair Discrimination**.

Section 1129(a)(1) requires a plan to "comply with the applicable provisions of [Title 11]". Violation of § 1122 is a violation of § 1129(a)(1). *Holywell Corp.*, 913 F.2d at 879-80. Section 1122 directly addresses grouping claims together, but does not directly address separating them. Under § 1122(a), "a plan may place a claim. . .in a particular class only if such claim. . . is substantially similar to the other claims. . .of such class". Although § 1122 does not say all similar claims must be in the same class, "§ 1122 contemplates some limits on the separate classification of similar claims". *Barakat*, 99 F.3d at 1524-25. "There must be some limit on a [proponent's] power to classify creditors. . .. The potential for abuse would be significant otherwise". *Holywell Corp.,* 913 F.2d at 880. This case perfectly illustrates why the courts have imposed limits on separate classification.

### 1. **Separate Classification of Similar Claims Raises an Inference of Impropriety**.

Separate classification of similar claims is scrutinized in the Ninth Circuit by a two-step process. First, the court assesses whether the claims are "substantially similar". *In re Marlow Manor Downtown, LLC*, 2015 WL 667543, *9 (BAP 9th Cir. 2015); *Wells Fargo Bank, N.A. v. Loop 76 LLC (In re Loop 76, LLC)*, 465 B.R. 525, 536-37 (BAP 9th Cir. 2012). If substantially similar claims are separately classified, gerrymandering concerns arise *(i.e.,* manipulation of the classification process to achieve controlled voting). The proponent then bears the burden of showing "a business or economic justification for doing so". *Bakarat*, 99 F.3d at 1525-26; *Loop*, 465 B.R. at 536-37.

Claims are "substantially similar" if they have the same legal characteristics. *Barakat*, 99 F.3d at 1526; *Oxford Life Ins. Co. v. Tucson Self-Storage, Inc. (In re Tucson Self-Storage, Inc.)*, 166 B.R. 892, 897 (BAP 9th Cir. 1994). This requires bankruptcy judges to

"evaluate the nature of each claim, *i.e.,* the kind, species or character of each category of claims". *Steelcase, Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994).

Of particular importance to this case is a companion principle: "the general rule is that the identity of the holder does not render the claims themselves dissimilar. ... The identity of the holder [of the claim] standing alone is not a basis for finding the claims themselves are dissimilar". *CW Capital Asset Management, LLC v. Burcom Capital II, LLC*, 2014 WL 2864678, *7 (E.D.N.C. 2014). "Insider status alone does not make a claim dissimilar". *In re Frascella Enterprises, Inc.*, 360 B.R. 435, 443 (Bankr. E.D. Pa. 2007). *Accord, Holywell Corp.*, 913 F.2d at 880; *In re ARN Ltd. LP*, 140 B.R. 5, 13 (Bankr. D.D.C. 1992). Said otherwise, an insider's status is not a "business or economic justification" for separate classification. An insider's unsecured claim is just that, an unsecured claim; and it cannot be isolated into a separate class unless admissible evidence proves there is a business or economic justification for doing so. Tested against these standards, the NV Creditors' Plan must be overruled.

**2.    The NV Creditors Do Not Carry Their Burden of Justifying Separate Classification of Mr. Le's Claim.**

The NV Creditors give the classification scheme short shrift. In concluding that the Plan satisfies § 1129(a)(1), the NV Creditors state only that "there are obvious and meaningful differences between the Claims in Classes 2 and 3 as compared to the Claims of Huynh and Le". General Memorandum, consec. pg. 13. That is conclusory in the extreme, and does not even begin to address the NV Creditors' burden of showing a "business or economic justification" for excluding Mr. Le's claim from Class 2. The NV Creditors say little about dissimilarities between Class 2 and Ms. Huynh's claim, and *nothing* about dissimilarities between Class 2 and Mr. Le's claim. The NV Creditors sarcastically represent only that Class 2 claims are "non-insider trade creditors who continue to do business with LSN post-petition and were not

'fortunate' enough to be improperly paid in full post-petition", and even that lacks evidentiary support. The Proponents do not identify a single fact that creates an "obvious and meaningful difference" between the claims they assign to Class 2 and Mr. Le's claim.

In fact, all are unsecured and all were incurred to sustain Little Saigon's business operations. An insider's unsecured claim does not become something different because he or she is an insider. The "kind, species [and] character" of the "trade claims" and Mr. Le's claim are identical in relation to the assets of Little Saigon. *See In re Sentinel Management Group, Inc.,* 398 B.R. 281, 297-98 (Bankr. N.D. Ill. 2008) (the question of similarity between claims "should focus on the nature or legal attributes of the claims and not on the status or circumstances of the claimants"; "the emphasis is not upon the holder of the claim so much as it is upon what type of claim the holder has"); *CW Capital,* 2014 WL 2864678 at *7; *Frascella Enterprises,* 360 B.R. at 442. Mr. Le's claim and trade claims are of the same legal character and the separate classification violates § 1122.

## D.   **The Plan Discriminates Unfairly Against Mr. Le.**

Unfair discrimination, which his proscribed by § 1129(b)(1), is closely related to manipulation of a plan's classification scheme. *See Holywell Corp.,* 913 F.2d at 879-80; *Tucson Self-Storage,* 166 B.R. at 898 ("[s]imilar to the issue of impermissible classification is the issue of unfair discrimination"). "A plan discriminates unfairly if it singles out the holder of some claim or interest for particular treatment". *Id.* If the classification scheme facilitates the violation of "basic priority rights, the plan cannot be confirmed". *Holywell Corp.,* 913 F.2d at 880.

/ / /

/ / /

/ / /

/ / /

1.      **The Plan Discriminates Among Unsecured Creditors**.

The NV Creditors make conflicting representations about whether their Plan discriminates against Mr. Le (and Ms. Huynh). At consecutive page 9 of the Cramdown Memorandum they say it does not but at consecutive page 30 they admit it does, at least by implication. This confirms that the NV Creditors have only thought about the result they want, not whether the evidence warrants that result. So while the NV Creditors conclude that "any" discrimination in this case is fair, the law holds that widely disparate treatment of similarly situated creditors is "unfairly discriminatory", nearly *per se*. *Tucson Self-Storage*, 166 B.R. at 898. *Accord, In re Deming Hospitality, LLC*, 2013 WL 1397458, *5 (Bankr. D.N.M. 2013) ("courts agree that if the treatment of substantially similar claims is 'grossly disparate', it is very difficult for the plan proponent to show 'fair' discrimination"; collecting cases). There can be little doubt that the NV Creditors do not sustain their heavy burden to prove an outcome that is disfavored by Ninth Circuit law.

2.      **Grossly Disparate Treatment is Unfair**.

The discrimination between trade creditors and Mr. Le is, quite obviously, grossly disparate. Since the trade is to be paid 100% and Mr. Le is to be paid nothing, the disparity could not be greater. The NV Creditors, however, say this is "fair" because Mr. Le is an insider and because "Le's claims arise in part from his efforts to fund Huynh's legal defense". Cramdown Memorandum, consec. pg. 11. The first is insufficient, *per se*.

As to the second point, the NV Creditors know very well that Mr. Le did not fund the "legal defense". He did not pay attorneys for the Debtors until after the verdict was entered and then, only to assess an appeal and to file the these Chapter 11 cases. Furthermore, even if Mr. Le had "funded the defense", there would be, and is, neither evidence nor logical argument that doing so constituted wrongful conduct. Mr. Le had nothing to do with the news articles and

1    opinion pieces on which the verdict rests and neither supporting one's mother nor paying for

2    lawyers to help address her legal problems is wrongful.  And on top of that, the NV Creditors

3    could not categorically subordinate Mr. Le's entire claim.  Even if they could show some measure

4    of actually harmful, egregious conduct, they would be obliged to tailor the subordination to

5    remedy actual harm endured by creditors as a result of the "defense payments".  *Trone v. Smith*

6    *(In re Westgate-California Corp.)*, 642 F.2d 1174, 1178 (9th Cir. 1981) (equitable subordination

7    cannot be imposed punitively; it can "go no further than to level off actual inequitable disparities

8    . . .for which [the] creditor is responsible"), *quoting In re Kansas City Journal-Post Co.*, 144 F.2d

9    791, 800-01 (8th Cir. 1944) ("*Westgate-Trone*").  Proponents do not address this requirement

10   either.

11

12        **3.**      **Insider Status Is Insufficient to Justify Discriminatory Treatment**

13                    **As a Matter of Law.**

14

15            The only other basis on which the NV Creditors justify the grossly disparate

16   treatment of Mr. Le is that he is an insider, but that is insufficient as a matter of law.  *CW Capital*,

17   2014 WL 2864678 at *7 (collecting cases that reject the notion that insider status allows separate

18   classification and disparate treatment).

19            The NV Creditors rely heavily on *In re LeBlanc*, 622 F.2d 872 (5th Cir. 1980) and

20   *In re 11,111, Inc.*, 117 B.R. 471 (Bankr. D. Minn. 1990).  Cramdown Memorandum, consec. pgs.

21   10-12.  Those cases, however, are decidedly contrary to the overwhelming weight of authority –

22   and the law of this circuit – which holds that separate classification and disparate treatment

23   cannot be based on insider status alone.  *ARN Ltd.*, 140 B.R. at 13, *citing Holywell Corp.*, 913

24   F.2d at 880.  Furthermore, *LeBlanc* is not only an outlier that has no precedential value for this

25   Court, it is a Bankruptcy Act case, decided under different standards and thus is distinguishable

26   / / /

27

28

Objection to Confirmation of Plan.docx
January 19, 2016 [2:25 PM]

even if it was correct. *ARN Ltd.*, 140 B.R. at 11-13. And *11,111, Inc.* is discredited for its reliance on *LeBlanc. Id.*

Like in *ARN Ltd.*, where the insiders had access to information but could not be discriminated against because they did not advantage themselves, there is no showing that Mr. Le "used superior knowledge concerning the debtor's affairs in an unfair manner". 140 B.R. at 13. Here, the evidence shows, singularly, that Ms. Huynh, not Mr. Le, decided when to take loans from him and when to pay them back. Claim Objection Opposition, Huynh Declaration ¶s 4-5; Le Declaration ¶ 23. Mr. Le had no other meaningful roles in management, he had nothing to do with editorial content and he obviously did not use any "superior knowledge" to advantage himself over others, since he has lost more than four times what the other creditors have lost *combined* and his most recent repayments were modest, at best.

**E.      Equitable Subordination.**

As is shown above, manipulation of a classification scheme and unfair discrimination are related concepts. *Tucson Self-Storage*, 166 B.R. at 898. In this case, those concerns also overlap with equitable subordination principles because that is the only reason Proponents give for the separate classification and the discriminatory treatment of Mr. Le.

**1.      Equitable Subordination: General Principles.**

As a matter of policy, "[e]quitable subordination is a drastic remedy, and one that is rarely granted". *Reaves v. Comerica Bank-California (In re GTI Capital Holdings, LLC)*, 2007 WL 2493671, *1 (Bankr. D. Ariz. 2007). "[E]quitable subordination requires that (1) the claimant. . .has engaged in inequitable conduct; (2) the misconduct results in injury to competing claimants or an unfair advantage to the claimant. . .; and (3) subordination is not inconsistent with bankruptcy law". *Paulman v. Gateway Venture Partners III, LP (In re Filtercorp, Inc.)*, 163 F.3d 570, 583 (9th Cir. 1998) (citations omitted). Strong, definitive evidence is required. "Where it is

11

sought to invoke the court's equitable subordination power, the record must objectively disclose a threshold demonstration that the claimant has behaved inequitably, to the detriment of the debtor or its other creditors. . . .A record of particular acts of misconduct will be especially important . . . ." *Westgate-California Corp. v. First National Finance*, 650 F.2d 1040, 1044 n.1. (9th Cir. 1981) ("*Westgate-First National*"). "The level of egregious conduct necessary for equitable subordination is high; even independently tortious and fraudulent conduct does not necessarily rise to the level required for equitable subordination in bankruptcy". *GTI Capital*, 2007 WL 2493671 at *14.

Not only is the threshold for egregious conduct high, but if subordination is warranted, it cannot be imposed punitively. Subordination must be tailored so it remedies the actual harm identified by the facts. *Westgate-Trone*, 642 F.2d at 1178. This Court could not possibly make the requisite findings based on the record offered by the Proponents. *See Westgate-First National,* 650F.2d at 1044 ("summary subordination of FNF's claims and interests is premature and we therefore must remand for further proceedings").

## 2.    The NV Creditors' Allegations.

The only arguments the NV Creditors offer to support equitable subordination of Mr. Le's claim are:

(a)    He is an insider.

(b)    He did not file a formal claim by the general claims bar date.

(c)    Mr. Le paid attorneys' fees for the benefit of the Debtors.

(d)    Mr. Le was responsible for determining when to loan money to Little Saigon and when he should be repaid.

(e)    Mr. Le had the same address as his mother.

///

Objection to Confirmation of Plan.docx
January 19, 2016 [3:12 PM]

(f)    Mr. Le did not produce documents in response to a Rule 2004 order. Cramdown Memorandum, consec. pgs. 35-36.

(g)    It is unclear, but the NV Creditors may also argue that because Little Saigon suffered losses in some of the loan years, Mr. Le's claim should be subordinated.

### 3.    Insider Status Is an Insufficient Basis For Equitable Subordination As a Matter of Law.

Just as Mr. Le's status as an insider is insufficient, as a matter of law, to justify separate classification or unfairly discriminatory treatment, insider status is also insufficient to justify subordination of his claim. "A creditor's claim cannot be subordinated to the claims of other creditors simply because the claimant is an officer, director, or controlling shareholder in a bankrupt corporation". *Wood v. Richmond (In re Branding Iron Steakhouse)*, 536 F.2d 299, 301 (9th Cir. 1976). Here, although Mr. Le is an insider, he is not a corporate officer, director or shareholder so the *Branding Iron* rule applies to him even more emphatically. And while Mr. Le is an insider, he is not a fiduciary. . .and even "fiduciary" status would not be sufficient either. *Westgate-Trone*, 642 F.2d at 1177-78 (citations omitted).

### 4.    Even If All The NV Creditors' Allegations Were True, They Would Fail to Sustain Their Burdens of Proof – And Almost None Are True.

Even if the NV Creditors' representations were true, they would not warrant equitable subordination because none of these allegations amount to wrongful conduct, much less egregious conduct. Furthermore, there is no showing that these supposed actions actually harmed creditors, nor is there quantification of actual harm.

(a)    Insider status, without more, is insufficient to warrant equitable subordination, as a matter of law (above).

/ / /

1

(b)     The fact that Mr. Le missed the claims bar date is utterly irrelevant to the

2

equitable subordination issue.  The accusation that Mr. Le missed the bar date "to avoid

3

disclosure" (Cramdown Memorandum, consec. pg. 36:24) is materially improper.  The NV

4

Creditors have no evidence whatsoever that would support that accusation, while the Le and

5

Weinstein Declarations that accompany the Claim Objection Opposition distinctly prove

6

excusable inadvertence.  Deposition testimony by Mr. Le and Ms. Huynh, which the NV

7

Creditors elicited on January 13, 2016, also was unequivocally consistent.

8

9

(c)     The accusation that Mr. Le "use[d] Nguyen as a 'front' for his financial

10

relationship with the debtor" (Cramdown Memorandum, consec. pg. 36:25) is equally specious

11

and equally wrongful.  Mr. Le and Ms. Nguyen have clearly, ably and credibly explained why

12

some of his loans came from an account in her name and the NV Creditors possess no evidence

13

that supports their allegations, which were improper when made.

14

15

(d)     The NV Creditors continue with the same undignified and improper theme

16

with the allegation that "[m]any of Le's transfers to the Debtor since 2012 include the direct or

17

indirect payment of defense attorneys and appear to have been used to fund the defense of

18

Huynh's own inequitable conduct".  Cramdown Memorandum, consec. pg. 35:21-23.  The

19

reference to "since 2012" can only be read to mislead the Court  into thinking that Mr. Le had

20

something to do with the facts underlying the NV Creditors' lawsuit which was filed in

21

September 2012.  "Since 2012" is materially misleading because the NV Creditors know that Mr.

22

Le made no payments to attorneys until December 2014 or early 2015 -- after the verdict was

23

entered.  They also know that he did not pay for "defense of Huynh's. . .conduct" but rather for

24

attorneys to assess an appeal and to commence these Chapter 11 cases.  Both of those are much

25

more about the outcome and effects of the trial than they are about "Huynh's conduct".

26

/ / /

27

28

1            (e)      The representation that Mr. Le decided when to make loans and when to

2   make repayments is also false. The NV Creditors unequivocally represent that "Le was even

3   responsible for determining when he and Nguyen should make transfer [sic] to the Debtor and in

4   making [sic] repayments to himself and Nguyen" (Cramdown Memorandum, consec. pg. 35:23-

5   25). That, however, is at best an inference the NV Creditors want the Court to draw, yet

6   characteristically they point to no evidence to support these representations. In fact, the Le and

7   Huynh Declarations offered with the Claim Objection Opposition negate the allegation

8   definitively. Le Declaration ¶ 23; Huynh Declaration ¶s 4-5. Deposition testimony given by both

9   witnesses on January 13, 2016 again was consistent.

10           (f)      The suggestion that Mr. Le's claim should be subordinated because he

11   shared an address with his mother for a time (for a few months after she sold her home to support

12   Little Saigon) is frivolous.

13           (g)      The representation that Mr. Le failed to produce documents in response to

14   the Rule 2004 order is, yet again, knowingly misleading. The Weinstein Declaration that

15   accompanies the Claim Objection Opposition proves that the NV Creditors' counsel voluntarily

16   passed the opportunity afforded them by the Rule 2004 order. They obviously knew that was so

17   when they made this statement.

18           (h)      While it is generally true that Little Saigon has struggled under the weight

19   and distraction of the litigation with the NV Creditors, the NV Creditors' evidence does not

20   definitively establish losses, much less quantify them. Furthermore, it is entirely reasonable to

21   expect a small business that is struggling with significant litigation to borrow money on a short

22   term basis from insiders. Even if Little Saigon was insolvent or undercapitalized – yet another

23   predicate the NV Creditors do not establish – that would not be sufficient to justify subordination

24   either. *Filtercorp*, 163 F.3d at 583; *Branding Iron Steakhouse*, 536 F.2d at 302. That an insider

Objection to Confirmation of Plan.docx
January 19, 2016 [2:25 PM]

made loans to an insolvent corporation does not warrant subordination, even where the loan documents are backdated. *Filtercorp*, 163 F.3d at 583. Instead, "subordination requires some showing of suspicious, inequitable conduct beyond mere initial undercapitalization of the enterprise". *Id., quoting Branding Iron*, 536 F.2d at 302.

Parsing the "facts" alleged by the NV Creditors confirms both the purpose of the Plan and the conclusion that their purpose should not be indulged. The NV Creditors completely ignore the burdens they bear and instead offer an *ad hominem* assembly of unproven accusations. Even if the facts alleged were true, they would fail to establish the requirements for equitable subordination in this circuit and it is worse that almost none of the allegations are true in the first place.

## F.    Recharacterization.

The NV Creditors cite *Official Committee of Unsecured Creditors, etc. v. Hancock Park Capital II, L.P. (In re Fitness Holdings, Int'l, Inc.)*, 714 F.3d 1141 (9th Cir. 2013) as authority for treating Mr. Le's claim as equity. While *Fitness Holdings* establishes that this Court has the judicial power to make such a ruling, the NV Creditors again provide no evidentiary foundation upon which it could do so.

### 1.    Recharacterization Requires Analysis of State Law.

*Fitness Holdings* holds that state law must be used to determine if unresolved funding constitutes a claim or equity. *Id.* at 1148 ("courts are required to define claims by reference to state law, and are thus required to recharacterize purported 'debt' as equity when state law would treat the asserted interest as an equity interest"). The bankruptcy court cannot rely vaguely on its equitable powers to recharacterize debt as equity. *Id.* at 1148-49.

Although the NV Creditors acknowledge this clear Ninth Circuit precedent (Cramdown Memorandum, consec. pgs. 18-19), they provide no analysis of California law on

point. Instead, to justify recharacterization of Mr. Le's claim as equity, the NV Creditors resort to exactly what the Ninth Circuit proscribes, a plea to equity. The NV Creditors argue nothing more than the fact that Mr. Le is an insider and that he "appeared to decide both when the Debtor needed funds and also when the Debtor would repay funds. . ..". Cramdown Memorandum, consec. pg. 34:18-19. These are two of the same representations made to justify equitable subordination (above) and they are as equally insufficient – and inaccurate – in this context.

### 2.    The NV Creditors' Argument Contravenes *Fitness Holdings*.

To support their argument for recharacterization of Mr. Le's claim, the NV Creditors refer the Court to "the same legal principles cited in Section IV above". Cramdown Memorandum, consec. p. 33. The "legal principles cited in Section IV" make no mention of California law on the debt-equity dichotomy. Instead, in Section IV of the Cramdown Memorandum (consec pg. 19) the NV Creditors urge the Court to use the "11 factors referred to as the '*AutoStyle*' or "*Roth Steel*' factors", and they rely directly and heavily upon *Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.)*, 269 F.3d 726, 750 (6th Cir. 2001). The NV Creditors go so far as to represent that the Ninth Circuit "approved application of factors from *AutoStyle*" in *Daewoo Motor America, Inc. v. Daewoo Motor Co., Ltd (In re Daewoo Motor America, Inc.)*, 554 Fed.Appx. 638 (9th Cir. 2014). Cramdown Memorandum, consec. p. 19:18.

In fact, in *Daewoo*, the Ninth Circuit mentioned *AutoStyle* only in passing, for the proposition that recharacterization is within the judicial power, distinguishing it from earlier cases it disapproved in *Fitness Holdings*. 554 Fed.Appx. at 639. Furthermore, in *Fitness Holdings*, the Ninth Circuit expressly <u>disapproved</u> *AutoStyle* and its use of "an eleven-factor test, derived from federal tax law, for determining whether a purported 'debt' is in fact 'equity'". 714 F.3d at 1148. Instead, " it is first necessary to determine whether that obligation gives the holder of the obligation a 'right to payment' under state law". *Id.* at 1149.

The Cramdown Memorandum thus heavily emphasizes – relies exclusively upon -- an analysis that is expressly disapproved by the Ninth Circuit, while it consciously ignores the Circuit's mandate to look to state law.[3]  This diversionary – and improper – style is likely used because California law looks to the parties' intent, *Hoppe v. Rittenhouse,* 279 F.2d 3, 8 (9th Cir. 1960), and the only evidence before this Court on intent is the substantial declarative and documentary evidence offered by Mr. Holliday, Mr. Le, Ms. Nguyen and Ms. Huynh, all of which proves only that Mr. Le's loans were intended to be loans and that the parties actually conducted themselves consistently with that intent.  Claim Objection Opposition Declarations, Holliday Declaration ¶s 11, 14-16, 19-21; Le Declaration ¶s 6-8, 16-22; Nguyen Declaration ¶s 4-6, 8-14; Huynh Declaration ¶s 3-5.  The Huynh and Le deposition testimony on January 13, 2016 was, again, consistent.

### III.

### OTHER PLAN DEFECTS

The improper treatment of Mr. Le's claim renders the Plan unconfirmable.  The Plan also suffers from other fatal defects.

**A.    The Plan Is Not Feasible.**

The Plan fails the feasibility test for at least two reasons.  First, it does not properly account for the Le and Huynh claims.  Second, the Plan does not show the Proponents have ready access to the cash needed to fund confirmation.

**1.    The Plan Does Not Adequately Account For Disputed Claims.**

"To be feasible for purposes of section 1129(a)(11), a plan must take into account the possibility that a potential creditor may, following confirmation, recover a large judgment

---

[3]    The same incorrect analysis is used to argue that Ms. Huynh's claim should be recharacterized as equity.  Cramdown Memorandum, consec. pg. 18.  It follows that the NV Creditors fail to make that case too, as a matter of law.

Objection to Confirmation of Plan.docx
January 19, 2016 [2:25 PM]

against the debtor". *Harbin*, 486 F.3d at 517; *accord, Pizza of Hawaii, Inc. v. Shakey's (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) ("the bankruptcy court's finding of feasibility was clearly erroneous because the plan failed to provide for the possibility that Shakey's would recover a large judgment").

This defect is not cured by simply assuming Mr. Le's claim will be treated as the Proponents wish. Neither is the defect cured by the fact that motions directed at Mr. Le's claim will be heard two days before the confirmation hearing. The February 1 hearings may be continued. And even if rulings are made against Mr. Le's claim on February 1, those rulings may be (likely would be) appealed. *Pizza of Hawaii* require that the Plan account for such a prospect. If the NV Creditors admit their Plan cannot be prosecuted if Mr. Le's claim is not definitively and finally subordinated or recharacterized, then the proper course is for them to withdraw it and await the outcome of the claim litigation. If the NV Creditors cannot make the Plan internally feasible and they refuse to withdraw it, the Court should definitively reject it.

**2.      The Plan Is Not Supported By Adequate Funding.**

The Plan also fails the feasibility test because it does not provide verifiable evidence of immediately available cash that is sufficient to effectuate the Plan. The NV Creditors provided with their disclosure statement a mere bank letter referring to a $400,000 deposit. Docket no. 200, Exhibit 3. That letter is six weeks old and there is no evidence that the money is still there. Neither have the NV Creditors provided evidence that the money referred to in the bank letter actually is dedicated to the Plan (or ever was).

Of perhaps greater importance, even assuming that $400,000 is available, there is no evidence that $400,000 is sufficient to implement the Plan, while the available evidence strongly indicates it is not, by a wide margin. The Plan contemplates priority tax claims and general unsecured creditors of approximately $271,000. It also acknowledges a lease rejection

claim of over $73,000 and Objectors are advised that the landlord would incur approximately $200,000 of damage if the Debtor's printing presses were removed. Objectors are also advised that accrued and unpaid professional fees owed to Mr. Pena are at least $200,000 as of mid-January 2016, and approximately $33,500 is owed to Mr. Holliday as of January 15, 2016. Those obligations, alone, totaling nearly $800,000, exceed the money the NV Creditors have posted by a wide margin (assuming, without conceding, that $400,000 actually is posted and available). Under *Harbin* and *Pizza of Hawaii*, the Proponents cannot simply assume that their objections to professionals' fees and claims will be sustained. They must post enough cash to cover <u>all</u> contingencies.

**B.    Other Defects.**

The Plan suffers from a variety of other defects as well. While most of the shortcomings listed here are less striking than the treatment of Mr. Le's claim, the shortfall in cash, and the Proponents' bad faith (below), each of these defects is also sufficient to prevent confirmation.

1.    The NV Creditors' Plan purports to retain "fishing expedition" rights for the Reorganized Debtor – *i.e.,* the NV Creditors – after confirmation. Rule 2004 proceedings are a tool provided for use during bankruptcy case administration to aid in development of creditors' rights and ultimately a plan. Once a plan is confirmed, the rights of creditors among themselves and vis-à-vis the Debtor are governed by the plan. There is no more investigation to be performed in aid of formulating a plan and whatever discovery is necessary in post-confirmation litigation should be governed only by the operative rules of procedure of the forum in which litigation proceeds.

2.    The NV Creditors also manipulate the concept of "substantial consummation" in their Plan. "Substantial consummation" is defined in § 1101(2) and requires the "transfer of all or substantially all the property, proposed by the plan to be transferred", in addition to assumption

20

1    by the successor to the debtor of the business, management or property and commencement of

2    distributions under the plan.

3            (a)    In the Plan, the NV Creditors provide that substantial consummation will

4    occur "once all Allowed Administrative Expense Claims and Allowed Priority Non-Tax Claims

5    have been in paid in full or [provided for]".  Plan, consec. pg. 30; Disclosure Statement, consec.

6    pg. 40.  Assuming, without conceding, that this provision would satisfy § 1101(2)(c), it ignores

7    the transfer of assets under subpart (A) and the assumption of property under subpart (B).  *See*

8    *Rev. Op. Group v. ML Manager LLC (In re Mortgages Ltd.),* 771 F.3d 623, 628-29 (9th Cir. 2014)

9    (distinguishing payments to creditors from "transfers of property. . .that are necessary to

10   accomplish reorganization and to shape the new financial structure of the debtor").

11           (b)    In this case, the NV Creditors are notably vague about transferring,

12   disposing of or taking over Little Saigon's property.  Indeed, the Plan does not address disposition

13   of Little Saigon's property at all.  It only addresses the corporate stock of Little Saigon, but that is

14   not property of Little Saigon.  The stock is property of Brigitte Huynh – whose affairs the Plan

15   specifically says it is not addressing or reorganizing.

16           (c)    Once a plan is substantially consummated, a proponent has much less

17   leeway in modifying it under § 1127(b) ("[t]he proponent of a plan or the reorganized debtor may

18   modify such plan at any time after confirmation of such plan and before substantial

19   consummation. . .").  It appears that the Plan is intentionally vague about satisfaction of subparts

20   (A) and (B) of § 1101(2), while paying lip service to substantial consummation concepts, so as to

21   maintain as much flexibility as possible in allowing the NV Creditors to make unilateral changes

22   to the Plan – such as deferring payments, imposing new requirements and delaying deadlines and

23   actions.  Here, the Plan identifies the point of substantial consummation as occurring when only

24   Administrative Expense and Non-Tax Priority Claims have been paid.  Almost the entire

Objection to Confirmation of Plan.docx
January 19, 2016 [2:25 PM]

implementation of the Plan will remain to be accomplished at that point, including, without

limitation, payment of general creditors, to whom the Proponents purport to "guarantee" cash

payments.  This maneuver should not be approved.

3.    The Plan also fails to satisfy § 1129(a)(5).  Under that provision, the Proponents

are required to "disclose[ ] the identity and affiliations of any individual proposed to serve, after

confirmation of the plan, as a director [or] officer. . .of the debtor. . .or a successor to the debtor

under the plan".  The Proponents also have to show that such appointments are "consistent with

the interests of creditors and equity security holders and with public policy".  § 1129(a)(5)(i), (ii).

(a)    The Plan and all of its supporting filings are silent on all of these factors.

All the Proponents do is identify the initial officers and directors of the Reorganized Debtor.

Plan, Exhibit C.  They offer nothing about the proposed officers and directors' affiliations and

they are equally silent on proving how these appointments are consistent with the interests of

creditors, equity holders and the public.  The NV Creditors theorize that this level of non-

disclosure is sufficient because they licensed only themselves to vote.  Section 1129(a)(5),

however, contains no such limitation and the policies underlying the statute demand compliance

with all disclosure requirements.

(b)    It is also obvious that the Plan is not in the best interests of the existing

equity holder, yet nothing is said on point at all, much less why that is appropriate.  While it is

obvious why the harsh treatment of Brigitte Huynh is satisfactory to the Proponents personally,

that is not the test.  The Plan must be in her best interests and obviously, it is not because it not

only destroys her business, it strips her of all ability to seek to overturn the NV Creditors'

judgment, giving her nothing in exchange.

/ / /

/ / /

# IV.

## THE PLAN IS NOT PROPOSED IN GOOD FAITH

A plan lacking a foundation of good faith cannot be confirmed.  11 U.S.C. § 1129(a)(3). *See In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1074-75 (9th Cir. 2002) (to satisfy the good faith requirement, a plan must fairly promote objectives consistent with the bankruptcy code; good faith is decided in the totality of the circumstances, on a case-by-case basis).  While the indicia and proof of a plan proponent's good faith are varied and variable, sufficient and serious questions are raised by the NV Creditors' own papers, such that they bear a burden of proof they have not sustained.

The Plan is obviously promulgated to effectuate the hostile takeover of a despised competitor.  While that fact alone may not prove bad faith, it brings legitimate focus to the issue. That triggering factor is then properly examined together with the facts that: the Proponents will spend large sums and realize nothing of value on their large claim if the Proponents' representations were actually carried out; most of the factual allegations on which the Plan rests are unsupported by evidence and most are known to be false; the few facts that are true do not come close to sustaining the Proponents' burdens; the Proponents rely on discredited or inapplicable legal precepts; and they make unqualified, personalized accusations about Mr. Le that, *at best*, rest only on the fact that he is Ms. Huynh's son.  Neither is the "Funding Commitment" established or close to sufficient.  It is thus easy to conclude that the Plan is really promulgated to overwhelm a disadvantaged litigation adversary, not to resolve debts or restructure a business.

The NV Creditors are also guarded in their disclosures about how the Plan would really work.  Scrutiny reveals, however, that the Plan is built upon a proposed chronology that would enable the NV Creditors to take over and shut down Little Saigon before they have actually

completed plan consummation activities or – tellingly – actually spent significant funds to benefit anyone but themselves.  Distilling the chronology contemplated by the Plan (which is not clearly stated) is revealing:

| **EVENT** | **OCCURRENCE** | **REFERENCE** |
|---|---|---|
| 1.  Effective Date | Confirmation Order + 1 Day | Disclosure Statement, p. 38-39 |
| 2.  Payment of Statutory Fees | Effective Date | Disclosure Statement, p. 55 |
| 3.  NV Creditors Acquire Stock of Little Saigon, Take Over Management and Acquire Privileges | Effective Date | Disclosure Statement p. 25-27, 34-36 |
| 4.  Administrative Claims Bar Date | Effective Date + 15 Days | Disclosure Statement, p. 23 |
| 5.  Professionals' Fee Application Bar Date | Effective Date + 15 Days | Disclosure Statement, p. 24 |
| 6.  Executory Contract Rejection Deadline | Effective Date + 45 Days | Disclosure Statement, p. 36-37 |
| 7.  Objections to Rejection Claims | Filing of Rejection Claim + 30 Days | Disclosure Statement, p. 36-37 |
| 8.  Objection to Claims | Effective Date + 60 Days | Disclosure Statement, p. 37-38 |
| 9.  Payments to Unclassified Claims, Class 1 (Non-Tax Priority) and Class 2 (General, Unsecured) | Allowance of Claim + 15 Days | Disclosure Statement, p. 26 |

When the essence of the Plan is subjected to scrutiny, the real plan becomes clear.  For nothing but the commitment to pay statutory fees, the NV Creditors completely take over Little Saigon and gain control of the Appeal, and even acquire Little Saigon's attorney-client privilege (Events 1 – 3).  At that point, no party in interest has been paid anything, nor have any significant proceedings occurred because administrative claim requests are not due for at least two weeks, no executory contracts have been addressed and no claims have been resolved or paid.

Most prominently of all, the NV Creditors give themselves immediate control over the Debtors' privileges and objections to the fees of professionals who opposed them, and the timing of payments to them and to arms'-length creditors, while nothing prevents the NV Creditors, once they pay statutory fees to achieve effectiveness, from immediately closing down Little Saigon, dismissing the Appeal, demanding confidential information from counsel and then converting the case to chapter 7. In short, the Plan completely dispossesses Brigitte Huynh, her family and her management and vests control and privileges in the NV Creditors before they pay anyone anything.

**V.**

**CONCLUSION**

If the NV Creditors' Plan is examined at "face value", it contravenes controlling legal precedent and relies on factual predicates that are completely without the support of admissible evidence. When the Plan is examined critically, its real purpose emerges and the Proponents' good faith is put to serous doubt. Under either approach, the Plan should be rejected.

Dated: January 19, 2016

Respectfully submitted,

WEINSTEIN LAW FIRM
A Professional Corporation

By: _____
DAVID R. WEINSTEIN
Attorneys for Joseph Le and Stephen B. Holliday

Objection to Confirmation of Plan.docx
January 19, 2016 [2:25 PM]

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

16501 Ventura Boulevard, Suite 400, Encino, CA 91436

A true and correct copy of the foregoing document entitled (*specify*): JOSEPH LE AND STEPHEN B. HOLLIDAY'S OBJECTION TO CONFIRMATION OF NV CREDITORS' PLAN

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 19, 2016 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) January 19, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
**JUDGE'S COPY:**
Honorable Mark S. Wallace
United States Bankruptcy Court
411 West Fourth Street, Suite 6135
Santa Ana, CA 92701

☐ Service information continued on attached page

**3. SERVED BY OVERNIGHT MAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 19, 2016 | JUDY CONTI | /s/ JUDY CONTI |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                 **F 9013-3.1.PROOF.SERVICE**

**8:15-bk-11875-MW Notice will be electronically mailed to:**

Sandor T Boxer on behalf of Defendant Michael Nguyen
tedb@tedboxer.com

Nancy S Goldenberg on behalf of U.S. Trustee United States Trustee (SA)
nancy.goldenberg@usdoj.gov

Ann K Johnston on behalf of Defendant Sentinel Insurance Company, LTD
ajohnston@bergerkahn.com, mtom@bergerkahn.com,tsmith@bergerkahn.com

Michael Jones on behalf of Interested Party Michael Jones
mike@mjthelawyer.com, michaeljonesmyecfmail@gmail.com

Douglas G Levin on behalf of Creditor Nguoi Viet Daily News, Inc.
DLevin@gibsondunn.com

Douglas G Levin on behalf of Creditor Dat Huy Phan
DLevin@gibsondunn.com

Douglas G Levin on behalf of Creditor Vinh Hoang
DLevin@gibsondunn.com

Tuananh Mai on behalf of Plaintiff The Little Saigon News Incorporated
pmai@tt-lawfirm.com

Craig Millet on behalf of Creditor Nguoi Viet Daily News, Inc.
cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com

Craig Millet on behalf of Creditor Dat Huy Phan
cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com

Craig Millet on behalf of Creditor Vinh Hoang
cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com

John Na on behalf of Plaintiff The Little Saigon News Incorporated
jna@tt-lawfirm.com

R G Pagter, Jr. on behalf of Creditor Marie To
gibson@ppilawyers.com, ecf@ppilawyers.com

R G Pagter, Jr. on behalf of Creditor Paul Huynh
gibson@ppilawyers.com, ecf@ppilawyers.com

Leonard Pena on behalf of Attorney Leonard Pena
lpena@penalaw.com, penasomaecf@gmail.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

Leonard Pena on behalf of Debtor The Little Saigon News Incorporated
lpena@penalaw.com, penasomaecf@gmail.com

Leonard Pena on behalf of Debtor Brigitte Laure Huynh
lpena@penalaw.com, penasomaecf@gmail.com

Leonard Pena on behalf of Plaintiff The Little Saigon News Incorporated
lpena@penalaw.com, penasomaecf@gmail.com

Frederick S Reisz on behalf of Defendant Superior Access Insurance Services, Inc.
reisz@mmrs-law.com, chun@mmrs-law.com,greene@mmrs-law.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

David R. Weinstein on behalf of Accountant Stephen B. Holliday
dweinstein@weinsteinlawfirm.net

David R. Weinstein on behalf of Interested Party David R. Weinstein
dweinstein@weinsteinlawfirm.net

David R. Weinstein on behalf of Interested Party Joseph Le
dweinstein@weinsteinlawfirm.net

David R. Weinstein on behalf of Interested Party Stephen B. Holliday
dweinstein@weinsteinlawfirm.net

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**